# Exhibit A

# Organizational Chart

# FGIC Organizational Structure



*All ownership interests are 100%.

☐ In process of being dissolved
☐ Formed June 2010 in anticipation of Surplus Restoration Plan

K&E 16334715

# Exhibit B

**Letter of Support from Administrative Agent**

# J.P.Morgan

August 3, 2010

**VIA ELECTRONIC MAIL**

Mr. John S. Dubel
FGIC Corporation
125 Park Avenue
New York, NY 10017

        Re:     FGIC Corp. Revolving Credit Agreement

Dear John:

      As you know, JPMorgan Chase Bank, N.A. ("JPMorgan") is a lender and the administrative agent (the "Administrative Agent") under that certain Revolving Credit Agreement (the "Revolving Credit Agreement"), dated as of December 12, 2005, by and among FGIC Corporation ("FGIC Corp.") and Financial Guaranty Insurance Company ("FGIC," and together with FGIC Corp., the "Company"), as borrowers and the other lender parties thereto.

      JPMorgan has been informed of FGIC Corp.'s ongoing efforts to restructure the Company. JPMorgan is also aware that FGIC Corp. is preparing to file a voluntary petition for relief under chapter 11 of title 11 of the United States Code and a proposed plan of reorganization (the "Plan").

      JPMorgan has reviewed the draft Plan attached hereto as Exhibit A and understands that, pursuant to the terms of the Plan, holders of general unsecured claims, on account of their allowed claims against FGIC Corp., will receive cash and common stock in reorganized FGIC Corp. In addition, JPMorgan is aware that FGIC Corp.'s timely restructuring is necessary to preserve the substantial value of FGIC Corp.'s net operating losses. JPMorgan is supportive of all of the key provisions of the Plan, including the distributions provided under Article III of the Plan and the release, injunction and exculpation provisions under Article X of the Plan.

      Based upon its review of the Plan and information FGIC Corp. provided to JPMorgan to date, JPMorgan hereby agrees that, subject to the receipt of an approved disclosure statement that does not show materially different facts than previously disclosed, it will timely vote its claims in support of the Plan. JPMorgan further agrees that, in its capacity as Administrative Agent, it will recommend to the other lenders under the Revolving Credit Agreement that they timely vote their respective claims in support of the Plan. JPMorgan's agreement to vote in favor of the Plan and recommend the Plan to other lenders is conditioned on the vote on the Plan occurring within one year of the date of this letter.

Notwithstanding the foregoing, each of the lenders retains the right to vote its respective claim as it sees fit. JPMorgan looks forward to continuing its discussions with FGIC Corp. to facilitate a swift and successful chapter 11 case.

Very truly yours,

JPMorgan Chase Bank, N.A.

By: *Susan E Atk[signature]*
Name: Susan Atkins
Title: Managing Director

# Exhibit C

# Letter of Support from MBIA

MBIA INC.
113 King Street
Armonk, New York 10504

August 3, 2010

**VIA ELECTRONIC MAIL**

Mr. John S. Dubel
FGIC Corporation
125 Park Avenue
New York, NY 10017

        Re:    FGIC Corp. 6% Senior Notes Due 2034

Dear John:

        As you know, MBIA Inc. ("MBIA") owns approximately 35.2%[1] of the 6% Senior Notes Due 2034, issued pursuant to that certain Indenture, dated January 12, 2004, between FGIC Corporation ("FGIC Corp."), as issuer, and The Bank of New York, as indenture trustee.

        In such capacity, we have been informed of FGIC Corp.'s ongoing efforts to restructure FGIC Corp. and Financial Guaranty Insurance Company ("FGIC," and together with FGIC Corp., the "Company"). We are aware that FGIC Corp. is preparing to file a voluntary petition for relief under chapter 11 of title 11 of the United States Code and a proposed plan of reorganization (the "Plan").

        We have reviewed the draft Plan attached hereto as Exhibit A and understand that, pursuant to the terms of the Plan, holders of general unsecured claims, including MBIA, on account of their allowed claims against FGIC Corp., will receive cash and common stock in reorganized FGIC Corp. In addition, we are aware that FGIC Corp.'s timely restructuring is necessary to preserve the substantial value of FGIC Corp.'s net operating losses. MBIA is supportive of all of the key provisions of the Plan, including the distributions provided under Article III of the Plan and the release, injunction and exculpation provisions under Article X of the Plan.

        Based upon our review of the Plan and the information FGIC Corp. has provided to MBIA to date, MBIA hereby agrees that, subject to receipt of an approved disclosure statement, MBIA will timely vote (or caused to be voted) its claims in support of the Plan and will support, and take all reasonable actions necessary or reasonably requested by FGIC Corp. to facilitate the solicitation, confirmation and consummation of the Plan; *provided,* that MBIA's support of the Plan is conditioned upon its review and approval of all Plan Supplement (as defined in the Plan) documents and any proposed modifications to the Plan.

        MBIA's support of the Plan is expressly conditioned upon the completeness and accuracy of the information provided to MBIA by the Company and its advisors in connection with

---

[1] This amount is exclusive of bonds held by FGIC Corporation.

MBIA's evaluation of the Plan.  It is MBIA's understanding that such information was complete and correct in all material respects when delivered and did not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not materially misleading in light of the circumstances under which such statements were made.  In the event that MBIA determines that any of the information provided to MBIA was false, incorrect, or incomplete, then MBIA expressly reserves the right to withdraw its support of the Plan.  In this regard, it is MBIA's understanding that (a) there are no actions, suits, claims, procedures, or investigations pending or threatened against the Company or any individual entitled to indemnification or expense reimbursement (the "<u>Indemnified Individuals</u>") that would give rise to a material claim for indemnification against the Company by any such Indemnified Individuals under applicable law, the Company's certificate of incorporation and/or the by-laws of the Company and (b) other than claims arising under the Credit Agreement (as defined in the Plan) and the Senior Notes Indenture (as defined in the Plan), there are no material General Unsecured Claims (as defined in the Plan) that may be allowed against FGIC Corp.

We are appreciative of FGIC Corp.'s consultation with MBIA with respect to its restructuring and look forward to continuing our discussions with FGIC Corp. to facilitate a swift and successful chapter 11 case.

Very truly yours,

MBIA Inc.


By: /s/ Ram Wertheim
Name: Ram Wertheim
Title: Chief Legal Officer

**Exhibit D**

**List of the Holders of the 20 Largest Unsecured Claims**

## List of the Holders of the 20 Largest Unsecured Claims

| | NAME OF CREDITOR, COMPLETE MAILING ADDRESS AND EMPLOYEE, AGENT OR DEPARTMENT OF CREDITOR FAMILIAR WITH CLAIM | NATURE OF CLAIM (bond debt, trade debt, bank loan, government contract, etc.) | INDICATE IF CLAIM IS CONTINGENT, UNLIQUIDATED, DISPUTED OR SUBJECT TO SETOFF | AMOUNT OF CLAIM (if secured, also state value of security) |
|---|---|---|---|---|
| 1 | WILMINGTON TRUST FSB<br>Attn.: Adam Berman<br>166 Mercer Street, Suite 2-R<br>New York, NY 10012<br>Phone: (212) 941-4415<br>Fax: (212) 343-1079 | Bond Debt | | $345,515,068 |
| 2 | JPMORGAN CHASE BANK, N.A., AS ADMINISTRATIVE AGENT<br>Attn.: Elizabeth A. Kelley<br>Special Loan Group<br>277 Park Avenue, 8th Floor<br>New York, NY 10017<br>Phone: (212) 622-4511<br>Fax: (212) 270-0430 | Bank Debt | | $46,000,000, |
| 3 | FINANCIAL GUARANTY INSURANCE COMPANY<br>Attn.: A. Edward Turi, III<br>125 Park Avenue<br>New York, NY 10017<br>Phone: (212) 312-3000<br>Fax: (212) 312-3093 | Intercompany Claim | | $30,000[1] |
| 4 | DUBEL & ASSOCIATES, LLC<br>Attn.: John S. Dubel<br>P.O. Box 524<br>Brookside, NJ 07926 | Monitoring Fee | | $10,500 |

---

[1] This figure reflects FGIC Corporation's estimate of the accrued value of intercompany claims as of the date hereof and is subject to change.

**Exhibit E**

**Summary of Assets and Liabilities**

## Summary of Assets and Liabilities

The following financial data is the latest available information and reflects FGIC Corp.'s financial condition as of July 31, 2010. The following financial data is not an admission of liability by FGIC Corp. FGIC Corp. reserves all rights to assert that any debt or claim included herein is a disputed claim or debt or challenge the priority, nature, amount or status of any claim or debt.

**Total Assets (Book Value):** $11.5 million

**Total Liabilities:** $391.5 million

**Exhibit F**

**Location of FGIC Corp.'s Assets, Books and Records**

## Location of FGIC Corp.'s Assets, Books and Records

Pursuant to Local Bankruptcy Rule 1007-2(a)(10), the locations of FGIC Corp.'s substantial assets, the location of its books and records, and the nature, location and value of any assets held by FGIC Corp. outside the territorial limits of the United States are as follows:

- FGIC Corp.'s books and records are located at its corporate headquarters at 125 Park Avenue, New York, New York 10017.

- FGIC Corp. owns 100% of the common stock of FGIC, as reflected on the books and records of FGIC, which are also located at 125 Park Avenue, New York, New York 10017.

- FGIC Corp. owns 100% of the common stock of FGIC (Australia) Pty Limited. The stock certificates evidencing FGIC Corp.'s ownership of FGIC (Australia) Pty Limited are also located at 125 Park Avenue, New York, New York 10017.

- As of July 31, 2010, FGIC Corp. had cash and other highly liquid assets of $11,539,833.77 in its bank accounts, a list of which appears below.

| Account Name | Institution | Currency | Account Number | Description | Account Type | Balance as of 7/31/2010 |
|---|---|---|---|---|---|---|
| FGIC Corporation | JPMorgan Asset Management | USD | XXX6674 | Investment | Money Market | $0 |
| FGIC Corporation | JPMorgan Asset Management | USD | XXX9861 | Tax Escrow | Money Market | $0 |
| FGIC Corporation | JPMorgan Chase Bank, N.A. | USD | XXXXX1847 | Operating Account | Cash | $0 |
| FGIC Corporation | State Street Bank and Trust Company | USD | XXXX3679 | Investment | Custody | $11,431,650.73 |
| FGIC Corporation | The Reserve | USD | XXXX4322 | Investment | Money Market | $0[1] |

---

[1] As of September 15, 2008, the Reserve Primary Fund (the "Fund") held approximately $785 million in Lehman Brothers Holdings, Inc. ("Lehman Bros.") commercial paper. As a result of Lehman Bros.'s bankruptcy filing, the Fund valued these securities at zero, causing the Fund's share price to "break the buck" and fall to $0.97. The Fund is currently being liquidated pursuant to orders of the United States District Court for the Southern District of New York. Given the uncertainty that FGIC will recoup any liquidated distribution on account of the approximately $502,796.71 in shares that FGIC Corp. held in the Fund as of July 29, 2010, FGIC Corp. has assigned a zero value to such shares.

| FGIC Corporation | Wells Fargo Advantage Funds | USD | XXXXXX5787 | Investment | Money Market | $108,183.04 |
| FGIC Corporation | Wells Fargo Advantage Funds | USD | XXXXXX5783 | Tax Escrow | Money Market | $0 |

To the best of my knowledge, FGIC Corp. does not hold any assets outside the territorial limits of the United States.

## Exhibit G

**FGIC Corp.'s Senior Management**

# FGIC Corp.'s Senior Management

Pursuant to Local Bankruptcy Rule 1007-2(a)(12), the following table provides the names of the individuals who comprise FGIC Corp.'s existing senior management, the length of their tenure and a brief summary of their relevant responsibilities and experience:

| Name | Title | Tenure | Responsibilities/Experience |
|---|---|---|---|
| John S. Dubel | Chief Executive Officer | January 2008- Present | Mr. Dubel is the Chief Executive Officer of FGIC Corp. Mr. Dubel also has served as a Director of FGIC Corp. since 2008, and is a member of the FGIC Corp. Board's Restructuring Committee. Mr. Dubel provides these services through Dubel & Associates, LLC, a turnaround management and restructuring firm. Previously, Mr. Dubel held the leadership responsibility for FGIC's Chief Risk Office, which consists of Credit Risk Management, the Special Exposure Group and Portfolio Risk Review. Mr. Dubel joined FGIC in January 2008. From 2006 through 2007, Mr. Dubel was a Partner and Managing Director of Gradient Partners, L.P., a single strategy distressed hedge fund. Before joining Gradient, from 2002 to 2006, Mr. Dubel was a Managing Director with AlixPartners, LLC, a firm specializing in turnaround and crisis management. Mr. Dubel received a Bachelor in Business Administration degree from the College of William and Mary. |
| A. Edward Turi, III | Executive Vice President and General Counsel | July 1991- Present | Mr. Turi is the Executive Vice President and General Counsel of FGIC Corp. Mr. Turi was an attorney at Cravath, Swaine & Moore from August 1984 until he joined FGIC Corp. in July 1991. He holds a BS from Georgetown University and a JD from the University of Virginia School of Law. |
| Nick Santoro | Senior Vice President, Chief Financial Officer and Assistant Treasurer | September 2005- Present | Mr. Santoro is the Senior Vice President, Chief Financial Officer and Assistant Treasurer of FGIC Corp. Mr. Santoro has over ten years experience in the insurance industry, including working for NYL Care Health Plans of New York, Inc. as Controller and for Prudential Health Care as Vice President of Finance. Mr. Santoro received a BBA from Baruch College and holds an MBA in Managerial Finance from Pace University. |

| John F. Donohoe | Vice President and Treasurer | February 2004-Present | Mr. Donohoe is a Vice President and the Treasurer of FGIC Corp. Prior to joining FGIC, Mr. Donohoe worked at GE Capital, in a business development role for GE Capital's insurance businesses. Over his career at GE Capital, Mr. Donohoe also served as a transactor in private equity, venture capital, and structured finance. Mr. Donohoe holds a BS from the University of Notre Dame, and an MBA from Columbia University. |
|---|---|---|---|
| Carolanne Gardner | Vice President and Secretary | February 1989-Present | Ms. Gardner is a Vice President and the Secretary of FGIC Corp. Ms. Gardner was an attorney at Mudge Rose Guthrie Alexander & Ferdon from August 1987 until she joined FGIC Corp. in February 1989. She holds a BS from St. John's University and a JD from Tulane University Law School. |
| Steven P. Natko | Vice President and Assistant Secretary | May 2005-Present | Mr. Natko is a Vice President and the Assistant Secretary of FGIC Corp. Mr. Natko joined FGIC Corp. in June 1996 after serving as associate, then partner, in several law firms, beginning his career in 1984. He holds a BA from Duke University and a JD from Duke University School of Law. |

# Exhibit H

# Cash Receipts and Disbursements,
# Net Cash Gain or Loss, Unpaid Obligations and Receivables

## Cash Receipts and Disbursements, Net Cash Gain or Loss, Unpaid Obligations and Receivables

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides, for the 30-day period following the commencement of this chapter 11 case, FGIC Corp.'s estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid, other than professional fees.

| | |
|---|---|
| **Cash Receipts** | $2,000 |
| **Cash Disbursements** | $0 |
| **Net Cash Gain/Loss** | $2,000 |
| **Unpaid Obligations** | N/A |
| **Unpaid Receivables** | N/A |

K&E 16334715