Paul M. Basta
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

    - and -

Patrick J. Nash, Jr. (*pro hac vice* pending)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Proposed Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| FGIC CORPORATION,[1] | ) | |
| | ) | Case No. 10-14215 (___) |
| Debtor. | ) | |
| | ) | |

---

**CHAPTER 11 PLAN OF REORGANIZATION OF FGIC CORPORATION**

---

**THIS DRAFT PLAN OF REORGANIZATION IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL BE MADE ONLY IN COMPLIANCE WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.**

Dated: August 3, 2010

---

[1] The last four digits of the Debtor's tax identification number are 6474. The location of the Debtor's corporate headquarters is 125 Park Avenue, New York, New York 10017.

# TABLE OF CONTENTS

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS................................................................4
    A.    Rules of Interpretation, Computation of Time and Governing Law.......................4
    B.    Defined Terms ........................................................................................................4

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS ......................11
    A.    Administrative Claims ..........................................................................................11
    B.    Priority Tax Claims...............................................................................................13

ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS IN THE DEBTOR ..........13
    A.    Summary...............................................................................................................13
    B.    Classification and Treatment of Claims and Equity Interests...............................14

ARTICLE IV. ACCEPTANCE OR REJECTION OF THE PLAN ...............................................18

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ...........................................18
    A.    General Settlement of Claims ...............................................................................18
    B.    Reorganized FGIC Corporation ...........................................................................18
    C.    Sources of Consideration for Plan Distributions .................................................18
    D.    Corporate Existence .............................................................................................19
    E.    Vesting of Assets in the Reorganized Debtor ......................................................19
    F.    Cancellation of Securities and Agreements .........................................................19
    G.    Surrender of Existing Securities ..........................................................................20
    H.    Corporate Action...................................................................................................20
    I.    Certificate of Incorporation and By-Laws ...........................................................20
    J.    Stock Trading Restrictions....................................................................................21
    K.    Post-Effective Date Recoveries ...........................................................................21
    L.    Directors and Officers of Reorganized FGIC Corporation..................................21
    M.    Effectuating Documents; Further Transactions ...................................................21
    N.    Section 1146 Exemption .......................................................................................22
    O.    Preservation of Causes of Action.........................................................................22

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...............................................23
    A.    Timing and Calculation of Distributions .............................................................23
    B.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ...........23

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ...........................................................................................26
    A.    Resolution of Disputed Claims .............................................................................26
    B.    Disallowance of Claims ........................................................................................28
    C.    Amendments to Claims.........................................................................................28
    D.    No Distributions Pending Allowance ...................................................................28
    E.    Distributions After Allowance .............................................................................28

K&E 16329129

ARTICLE VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................................................................................................................29

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ..........29

    B.    Claims on Account of the Rejection of Executory Contracts or Unexpired Leases ...............................................................................................................29

    C.    Procedures for Counterparties to Executory Contracts and Unexpired Leases Assumed Pursuant to the Plan .................................................................30

    D.    Survival of Corporate Indemnification Obligations .............................................31

ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ..............................31

    A.    Conditions ...........................................................................................................31

    B.    Waiver of Conditions ..........................................................................................32

    C.    Effect of Non-Occurrence of Conditions to the Effective Date ...........................32

ARTICLE X. SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS ................................................................................................................32

    A.    Compromise and Settlement ...............................................................................32

    B.    Subordinated Claims ...........................................................................................33

    C.    Discharge of Claims and Termination of Equity Interests....................................33

    D.    Release of Liens ..................................................................................................33

    E.    Debtor Release ....................................................................................................34

    F.    Releasing Party Release .......................................................................................35

    G.    Exculpation .........................................................................................................36

    H.    Injunction ............................................................................................................36

ARTICLE XI. BINDING NATURE OF PLAN ....................................................................36

ARTICLE XII. RETENTION OF JURISDICTION ...............................................................37

ARTICLE XIII. MISCELLANEOUS PROVISIONS .............................................................38

    A.    Modification of Plan ............................................................................................38

    B.    Revocation of Plan ..............................................................................................38

    C.    Successors and Assigns .......................................................................................39

    D.    Reservation of Rights...........................................................................................39

    E.    Section 1145 Exemption ......................................................................................39

    F.    Payment of Statutory Fees ...................................................................................39

    G.    Section 1125(e) Good Faith Compliance.............................................................39

    H.    Further Assurances...............................................................................................39

    I.    Severability .........................................................................................................40

    J.    Service of Documents..........................................................................................40

    K.    Filing of Additional Documents ..........................................................................41

    L.    No Stay of Confirmation Order ...........................................................................41

K&E 16329129

FGIC Corporation, as the debtor and debtor in possession in the above-captioned chapter 11 case, hereby respectfully proposes the following plan of reorganization under chapter 11 of the Bankruptcy Code.

## ARTICLE I.

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

*A.     Rules of Interpretation, Computation of Time and Governing Law*

1.      For purposes of this document:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part, or to affect the interpretation, of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

3.      Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

*B.     Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below:

1.      "*Administrative Agent*" means JPMorgan Chase Bank, N.A., in its capacity as administrative agent under the Credit Agreement.

2.    *"Administrative Claim"* means a Claim for costs and expenses of administration of the Debtor's estate under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date to preserve the Debtor's estate; and (b) Allowed Claims of Professionals in the Chapter 11 Case.  Any fees or charges assessed against the Debtor's estate pursuant to section 1930 of chapter 123 of title 28 of the United States Code shall be excluded from the definition of Administrative Claim and shall be paid in accord with Article II.A of the Plan.

3.    *"Affiliate"* shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

4.    *"Allowed"* means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is (i) scheduled by the Debtor in a liquidated amount and not as disputed or contingent or (ii) evidenced by a valid Proof of Claim and as to which the Debtor or a party in interest has not filed an objection by the Claims Objection Bar Date; or (b) a Claim that is Allowed pursuant to the Plan or any stipulation approved by, or order of, the Bankruptcy Court.

5.    *"Bankruptcy Code"* means title 11 of the United States Code, as may be amended from time to time.

6.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Southern District of New York, having jurisdiction over the Chapter 11 Case and, to the extent of the withdrawal of any reference under section 157 of title 28 of the United States Code and/or the General Order of the United States District Court for the Southern District of New York pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Southern District of New York.

7.    *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case and the general, local and chambers rules of the Bankruptcy Court, as may be amended, modified or supplemented from time to time.

8.    *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

9.    *"By-Laws"* means the by-laws of the Reorganized Debtor, which will be included in the Plan Supplement.

10.    *"Cash"* means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

11.    *"Cash Distribution Amount"* means the Cash on hand net of (a) the Chapter 11 Funding Amount and (b) the Reorganized Debtor Funding Amount.

12.    *"Causes of Action"* means all actions, Causes of Action, Claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or

otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the Chapter 11 Case, including through the Effective Date.

13. "*Certificate of Incorporation*" means the certificate of incorporation of the Reorganized Debtor, which is included in the Plan Supplement.

14. "*Chapter 11 Case*" means the chapter 11 case commenced by the Debtor and styled *In re FGIC Corporation*, Case No 10-14215, which is pending before the Bankruptcy Court.

15. "*Chapter 11 Funding Amount*" means the Cash needed to fund payment of Convenience Claims and Administrative Claims, including, without limitation, Professional Compensation, both during the Chapter 11 Case and after the Effective Date.

16. "*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

17. "*Claims Objection Bar Date*" means the deadline for objecting to Claims, which shall be on the date that is sixty (60) days after the Effective Date, unless extended by an order of the Bankruptcy Court, upon notice and a hearing.

18. "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

19. "*Class*" means a category of Holders of Claims or Equity Interests pursuant to section 1122(a) of the Bankruptcy Code.

20. "*Common Stock*" means the common stock of FGIC Corporation.

21. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified having been satisfied or waived.

22. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

23. "*Confirmation Hearing*" means the hearing before the Bankruptcy Court on the motion for entry of the Confirmation Order.

24. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

25. "*Consummation*" means the occurrence of the Effective Date.

26. "*Convenience Claim*" means: any Claim against the Debtor that, but for being defined as a Convenience Claim, would be a General Unsecured Claim, and either (a) is Allowed in an amount of $15,000 or less or (b) is Allowed in an amount greater than $15,000, but is subject to an irrevocable election by the Holder thereof to reduce the Allowed amount of the

Claim to $15,000 (or less) for the purpose of rendering the Claim a Convenience Claim.

27.     "*Cost Sharing Agreement*" means that certain Space and Cost Sharing Agreement by and between FGIC Corporation and FGIC, dated as of January 1, 2004.

28.     "*Credit Agreement*" means that certain Revolving Credit Agreement, dated as of December 12, 2005, as may have been amended, supplemented or otherwise modified from time to time, by and among FGIC Corporation, FGIC, the lenders party thereto and JPMorgan Chase Bank, N.A. as Administrative Agent.

29.     "*Debtor*" means FGIC Corporation.

30.     "*Disclosure Statement*" means the disclosure statement relating to the Plan, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto.

31.     "*Disputed Claim*" means any Claim that is not yet Allowed.

32.     "*Distribution Agent*" means the entity or entities selected by the Debtor or the Reorganized Debtor, as applicable, to make or facilitate distributions pursuant to the Plan.

33.     "*Distribution Notification Date*" means the date that is five days after the Confirmation Date.

34.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which:  (a) no stay of the Confirmation Order is in effect; and (b) all conditions precedent to the Effective Date have been satisfied or waived.

35.     "*Equity Interest*" means any share of Common Stock, Preferred Stock or other instrument evidencing an ownership interest in the Debtor, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in the Debtor that existed immediately prior to the Effective Date.

36.     "*Excluded Indemnification Claims*" are indemnification and expense reimbursement claims of individuals otherwise entitled to indemnification or expense reimbursement from the Debtor, where the claim for indemnification or expense reimbursement relates to actions or omissions of such individuals that constituted criminal conduct, gross negligence or willful misconduct of such individuals.

37.     "*Exculpated Parties*" means, collectively, the Reorganized Debtor and the Released Parties.

38.     "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection pursuant to section 365 of the Bankruptcy Code.

39.     "*Final Order*" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the subject matter, as entered on the docket in the Chapter 11 Case or the docket of any court of competent jurisdiction, that has not been reversed,

stayed, modified or amended, and as to which the time to appeal, seek certiorari or move for a new trial, reargument or rehearing has expired, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or as to which the request for new trial, reargument or rehearing has been denied, resulted in no modification of such order or otherwise been dismissed with prejudice.

40.    "*FGIC*" means Financial Guaranty Insurance Company, the wholly-owned subsidiary of the Debtor. FGIC is not a debtor in this chapter 11 case, but the common stock of FGIC is an asset of the Debtor's estate. Accordingly, under 28 U.S.C. § 1334, the Bankruptcy Court has jurisdiction over FGIC.

41.    "*General Unsecured Claim*" means a Claim against the Debtor, other than an Administrative Claim, Priority Tax Claim, Priority Non-Tax Claim, Secured Tax Claim, Other Secured Claim, Intercompany Claim or Section 510(b) Claim.

42.    "*Holder*" means an Entity holding a Claim or an Equity Interest.

43.    "*Impaired*" means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is not Unimpaired.

44.    "*Indenture Trustee*" means Wilmington Trust FSB, in its capacity as successor indenture trustee under the Senior Notes Indenture.

45.    "*Intercompany Claim*" means any Claim held by the Debtor against an Affiliate or any claim held by an Affiliate against the Debtor.

46.    "*Interim Compensation Procedures Order*" means any order establishing procedures for interim compensation and reimbursement of expenses for Professionals.

47.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

48.    "*MBIA*" means MBIA, Inc., in its capacity as a holder of the Senior Notes.

49.    "*New Common Stock*" means common stock of Reorganized FGIC Corporation.

50.    "*New FGIC Corporation Board*" means the initial board of directors of Reorganized FGIC Corporation.

51.    "*Other Secured Claim*" means any secured claim other than a Secured Tax Claim.

52.    "*Outstanding New Common Stock*" means the shares of New Common Stock to be issued as of the Effective Date on account of the General Unsecured Claims.

53.    "*Petition Date*" means the date on which the Debtor files the Chapter 11 Case.

K&E 16329129

54.     "*Plan*" means the Debtor's chapter 11 plan of reorganization as may be altered, amended, modified or supplemented from time to time, including the Plan Supplement and all exhibits, supplements, appendices and schedules thereto.

55.     "*Plan Supplement*" means, as it may be amended prior to the Effective Date, the supplement or supplements to the Plan that contain certain documents relevant to the implementation of the Plan.

56.     "*Preferred Stock*" means the preferred stock of FGIC Corporation.

57.     "*Prepetition Lenders*" means the entities that hold the unsecured debt issued under the Credit Agreement.

58.     "*Prepetition Lenders' Claim*" means the Claim of the Administrative Agent derived from and based upon the Credit Agreement and related documents and held on behalf of the Prepetition Lenders.

59.     "*Priority Non-Tax Claim*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

60.     "*Priority Tax Claim*" means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

61.     "*Professional*" means an entity:  (a) employed in this Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

62.     "*Professional Claims*" means:  a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

63.     "*Professional Compensation*" means:  all accrued fees and expenses (including success fees) for services rendered by all Professionals through and including the Confirmation Date to the extent any such fees and expenses have not been paid and regardless of whether a fee application has been filed for such fees and expenses.  To the extent there is a Final Order denying some or all of a Professional's fees or expenses, such denied amounts shall no longer be considered Professional Compensation.

64.     "*Professional Fee Escrow Account*":  An interest-bearing account in an amount equal to the Professional Fee Reserve Amount and funded by the Debtor on the Confirmation Date.

65.     "*Professional Fee Reserve Amount*":  Professional Compensation through the Confirmation Date as estimated in accordance with Article II.A.2(c) herein.

66. "*Proof of Claim*" means a proof of claim filed against the Debtor in the Chapter 11 Case.

67. "*Pro Rata*" means, with respect to any Class, the ratio of a Claim in such Class, including principal and accrued interest, as of the Petition Date, to the aggregate amount of all Claims in such Class, including principal and accrued interest, as of the Petition Date.

68. "*Record Date*" means September 16, 2010, which is the date set forth in the order approving the disclosure statement related to this Plan for determining the Holders of Claims entitled to vote to accept or reject the Plan.

69. "*Released Parties*" means, collectively: (a) the Debtor and the Debtor's current and former officers and directors; (b) the Administrative Agent; (c) the Indenture Trustee; (d) the Prepetition Lenders; (e) the Senior Noteholders; (f) any and all Holders of an Equity Interest in the Debtor; (g) Dubel & Associates, LLC; (h) with respect to each of the persons named in (a)–(g) above, such entity's directors, officers, shareholders, partners, members, employees, agents, affiliates, parents, subsidiaries, predecessors, successors, heirs, executors and assigns, attorneys, financial advisors, accountants and other professionals or representatives when acting in any such capacities; and (i) with respect to each of the entities named in (a)–(h) above, each in their respective capacities set forth in such clause.

70. "*Releasing Parties*" means, collectively: (a) the Administrative Agent; (b) the Indenture Trustee; (c) the Prepetition Lenders; (d) the Senior Noteholders; (e) any and all Holders of an Equity Interest in the Debtor; (f) Dubel & Associates, LLC; (g) with respect to each of the persons named in (a)–(f) above, such entity's directors, officers, shareholders, partners, members, employees, agents, affiliates, parents, subsidiaries, predecessors, successors, heirs, executors and assigns, attorneys, financial advisors, accountants and other professionals or representatives when acting in any such capacities; and (h) with respect to each of the entities named in (a)–(g) above, each in their respective capacities set forth in such clause. None of the entities listed in (a)–(f) above shall be deemed to be a Releasing Party unless such entity affirmatively votes in favor of the Plan or abstains from voting on the Plan and does not elect to reject the Releasing Party release provisions contained herein.

71. "*Reorganized Debtor*" means Reorganized FGIC Corporation.

72. "*Reorganized Debtor Funding Amount*" means $400,000.

73. "*Reorganized FGIC Corporation*" means FGIC Corporation, including any successor thereto, by merger, consolidation or otherwise, on or after the Effective Date.

74. "*Schedules*" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified or supplemented from time to time.

75. "*Section 510(b) Claim*" means any Claim against the Debtor arising from rescission of a purchase or sale of a security of the Debtor or an Affiliate of the Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or

contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

76.     *"Secured Tax Claim"* means any secured claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

77.     *"Senior Noteholders"* means the Holders of the Senior Notes.

78.     *"Senior Notes"* means the 6% Senior Notes Due 2034 issued pursuant to the Senior Notes Indenture.

79.     *"Senior Notes Claim"* means the Claim held by the Indenture Trustee derived from and based upon the Senior Notes Indenture and held on behalf of the Senior Noteholders.

80.     *"Senior Notes Indenture"* means that certain Indenture, dated January 12, 2004, between FGIC Corporation, as issuer, and The Bank of New York Mellon, as indenture trustee.

81.     *"Tax Allocation Agreement"* means that certain Amended and Restated Income Tax Allocation Agreement by and between FGIC and FGIC Corporation dated as of December 18, 2003.

82.     *"Unexpired Lease"* means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

83.     *"Unimpaired"* means, with respect to a Class of Claims or Equity Interests, a Class of Claims or Equity Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

84.     *"U.S. Trustee"* means the United States Trustee for the Southern District of New York.

85.     *"Voting Class"* means Class 6.

86.     *"Voting Deadline"* means October 18, 2010, which is the deadline for, among other things, voting to accept or reject the Plan.

## ARTICLE II.

## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

*A.     Administrative Claims*

1.     Payment of Administrative Claims

Unless otherwise agreed to by the Holder of an Administrative Claim and the Debtor or the Reorganized Debtor, as applicable, each Holder of an Allowed Administrative Claim (other than any Professional Claim) will receive, in full and final satisfaction of its Administrative Claim, Cash equal to the amount of such Allowed Administrative Claim either:  (a) on the

Effective Date; (b) if the Administrative Claim is not Allowed as of the Effective Date, 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim.

2.  Professional Compensation

(a)  Final Fee Applications

All final requests for payment of Professional Claims, including any amounts held back pursuant to the Interim Compensation Procedures Order, must be filed with the Bankruptcy Court and served on the Reorganized Debtor no later than 45 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Case, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court and paid by the Reorganized Debtor.

(b)  Professional Fee Escrow Account

In accordance with Article II.A.2(c) hereof, on the Confirmation Date, the Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the aggregate Professional Fee Reserve Amount for all Professionals. The Professional Fee Escrow Account shall be maintained in trust for the Professionals. Such funds shall not be considered property of the estates of the Debtor or Reorganized Debtor, as applicable. The amount of Professional Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtor from the Professional Fee Escrow Account when such Claims are Allowed by a Final Order. When all Professional Claims have been paid in full, amounts remaining in the Professional Fee Escrow Account, if any, shall revert to the Distribution Agent and shall be distributed on a Pro Rata basis to Holders of Allowed Class 6 Claims.

(c)  Professional Fee Reserve Amount

To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Professionals shall estimate their Professional Compensation prior to and as of the Confirmation Date and shall deliver such estimate to the Debtor no later than 10 days prior to the Confirmation Date, *provided*, that such estimate shall not be considered an admission with respect to the fees and expenses of such Professional. If a Professional does not provide an estimate, the Debtor may estimate the unbilled fees and expenses of such Professional. The total amount so estimated as of the Confirmation Date shall comprise the Professional Fee Reserve Amount.

(d)  Post-Effective Date Professional Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Reorganized Debtor shall, in the ordinary course of business and without any further

K&E 16329129

notice to or action, order or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional or other fees and expenses related to implementation and Consummation of the Plan incurred by the Reorganized Debtor. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court.

B.      *Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive one of the following treatments on account of such Claim: (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; (2) Cash in an amount agreed to by the Holder of such Claim and the Debtor or Reorganized Debtor, as applicable, *provided*, that such parties may further agree for the payment of such Allowed Priority Tax Claim at a later date; or (3) at the option of the Debtor, Cash in an aggregate amount of such Allowed Priority Tax Claim payable in installment payments over a period of not more than five years after the Petition Date pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtor and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND INTERESTS IN THE DEBTOR

A.      *Summary*

1.      Except for the claims addressed in Article II above (or as otherwise set forth herein), all Claims against the Debtor are placed in Classes. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims or Priority Tax Claims.

2.      Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against, and Equity Interests in, the Debtor. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

3. <u>Summary of Classification and Treatment of Claims and Equity Interests</u>

| Class | Claim | Status | Voting |
|-------|-------|--------|--------|
| 1 | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| 2 | Secured Tax Claims | Unimpaired | No (presumed to accept) |
| 3 | Other Secured Claims | Unimpaired | No (presumed to accept) |
| 4 | Intercompany Claims | Unimpaired | No (presumed to accept) |
| 5 | Convenience Claims | Unimpaired | No (presumed to accept) |
| 6 | General Unsecured Claims | Impaired | Yes |
| 7 | Equity Interests | Impaired | No (deemed to reject) |
| 8 | Section 510(b) Claims | Impaired | No (deemed to reject) |

B.  *Classification and Treatment of Claims and Equity Interests*

1.  <u>Class 1—Priority Non-Tax Claims</u>

(a)  *Classification*:  Class 1 consists of Priority Non-Tax Claims.

(b)  *Voting*:  Class 1 is Unimpaired and Holders of Class 1 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan.

(c)  *Treatment*:  Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of and in exchange for each Allowed Priority Non-Tax Claim, each Holder of such Allowed Priority Non-Tax Claim shall receive, at the sole option of the Debtor or the Reorganized Debtor: (i) Cash on the Effective Date in an amount equal to such Allowed Priority Non-Tax Claim; or (ii) commencing on the Effective Date and continuing over a period not exceeding five years from the Petition Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Priority Non-Tax Claim, together with interest at the applicable rate under non-bankruptcy law, subject to the sole option of the Debtor or the Reorganized Debtor to prepay the entire amount of the Allowed Priority Non-Tax Claim.

14

2. <u>Class 2—Secured Tax Claims</u>

    (a)    *Classification*:  Class 2 consists of Secured Tax Claims.

    (b)    *Voting*:  Class 2 is Unimpaired and Holders of Class 2 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan.

    (c)    *Treatment*:  Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of and in exchange for each Allowed Secured Tax Claim, each Holder of such Allowed Secured Tax Claim shall receive, at the sole option of the Debtor or the Reorganized Debtor:  (i) Cash on the Effective Date in an amount equal to such Allowed Secured Tax Claim; or (ii) commencing on the Effective Date and continuing over a period not exceeding five years from the Petition Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable rate under non-bankruptcy law, subject to the sole option of the Debtor or the Reorganized Debtor to prepay the entire amount of the Allowed Secured Tax Claim.

3. <u>Class 3—Other Secured Claims</u>

    (a)    *Classification*:  Class 3 consists of Other Secured Claims.

    (b)    *Voting*:  Class 3 is Unimpaired and Holders of Class 3 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan.

    (c)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction and discharge of and in exchange for each Allowed Other Secured Claim, each Holder of such Allowed Other Secured Claim shall receive, at the sole option of the Debtor or the Reorganized Debtor: (i) Cash on the Effective Date in an amount equal to such Allowed Other Secured Claim; or (ii) commencing on the Effective Date and continuing over a period not exceeding five years from the Petition Date, equal semi-annual Cash payments in an aggregate amount equal to such Allowed Other Secured Claim, together with interest at the applicable rate under non-bankruptcy law, subject to the sole option of the Debtor or the Reorganized Debtor to prepay the entire amount of the Allowed Other Secured Claim.

K&E 16329129

4.    Class 4—Intercompany Claims

(a)    *Classification*:  Class 4 consists of Intercompany Claims.

(b)    *Voting*:  Class 4 is Unimpaired and the Holders of Class 4 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

(c)    *Treatment*:  All or a portion of the Intercompany Claims may be reinstated, capitalized or otherwise discharged in any manner as of the Effective Date at the Debtor's or the Reorganized Debtor's sole discretion.

5.    Class 5—Convenience Claims

(a)    *Classification*:  Class 5 consists of Convenience Claims.

(b)    *Voting*:  Class 5 is Unimpaired and the Holders of Class 5 Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Convenience Claims are not entitled to vote to accept or reject the Plan.

(c)    *Treatment*:  Each Holder of a Convenience Claim shall be paid in full in Cash on the Distribution Date or as soon thereafter as is practicable.

6.    Class 6—General Unsecured Claims

(a)    *Classification*:  Class 6 consists of General Unsecured Claims.

(b)    *Allowance of Certain Claims*:

(i)    On the Effective Date, the Prepetition Lenders' Claim shall be Allowed in the aggregate amount of $46,000,000 plus accrued interest and any reasonable fees and expenses owing as of the Petition Date with respect to the obligations under the Credit Agreement.

(ii)    On the Effective Date, the Senior Notes Claim will be Allowed in the aggregate amount of $261,895,000 plus accrued interest and any reasonable fees and expenses owing as of the Petition Date with respect to the obligations under the Senior Notes Indenture. For the purpose of clarity, the Allowed Senior Notes Claim shall not include the $63,105,000 of Senior Notes held by the Debtor and shall not include accrued interest on account of such Senior Notes held by the Debtor.

(c)    *Voting*:  Class 6 is Impaired and Holders of Class 6 Claims are entitled to vote to accept or reject the Plan.

K&E 16329129

(d)  *Treatment*:  On the Effective Date, in full and final satisfaction and discharge of and in exchange for each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (i) the Cash Distribution Amount and (ii) 100% of the Outstanding New Common Stock.

(e)  *Convenience Claim Election Rights*:  Each Holder of an Allowed General Unsecured Claim may elect to be treated as a Holder of a Convenience Claim in Class 5 by electing to reduce its Allowed General Unsecured Claim to the amount of $15,000 or less in full and final satisfaction, release and discharge of such Allowed General Unsecured Claim.  For the avoidance of doubt, the Indenture Trustee shall be deemed to be the Holder of any and all Claims arising under the Senior Notes Indenture for the purpose of exercising Convenience Claim election rights with respect to such Claims.  Likewise, the Administrative Agent shall be deemed to be the Holder of any and all Claims arising under the Credit Agreement for the purpose of exercising convenience claim election rights with respect to such Claims.  Any election must be made on the Ballot, and except as may be agreed to by the Debtor or the Reorganized Debtor, no Holder of a General Unsecured Claim can elect treatment as a Convenience Claim after the Voting Deadline.  Upon any such valid and irrevocable election, the General Unsecured Claim of such Holder shall be automatically reduced to $15,000 (or such lower amount that the Holder elects) and shall no longer be entitled to any other distribution as contemplated by this Plan.

7.  Class 7—Equity Interests

(a)  *Classification*:  Class 7 consists of all Equity Interests in FGIC Corporation.

(b)  *Voting*:  Class 7 is Impaired and Holders of Class 7 Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Equity Interests are not entitled to vote to accept or reject the Plan.

(c)  *Treatment*:  On the Effective Date, all Equity Interests in FGIC Corporation shall be cancelled and Holders of such interests shall not receive any distribution under the Plan on account of such interests.

8.  Class 8—Section 510(b) Claims

(a)  *Classification*:  Class 8 consists of Section 510(b) Claims.

(b)  *Voting*:  Class 8 is Impaired and Holders of Class 8 Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

(c)     *Treatment:*  Holders of Section 510(b) Claims shall not receive any distribution on account of such 510(b) Claims.  On the Effective Date, all Section 510(b) Claims shall be discharged.

# ARTICLE IV.

## ACCEPTANCE OR REJECTION OF THE PLAN

The Debtor requests Confirmation under section 1129(b) of the Bankruptcy Code with respect to any Impaired Class that does not accept the Plan pursuant to section 1126 of the Bankruptcy Code.  The Debtor reserves the right to modify Article III of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE V.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     *General Settlement of Claims*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.  Subject to Article VI, all distributions made to Holders of Allowed Claims in any Class are intended to, and shall, be final.

B.     *Reorganized FGIC Corporation*

On the Effective Date, the New FGIC Corporation Board shall be established. Reorganized FGIC Corporation shall be authorized to adopt any agreements, documents and instruments and to take any other actions contemplated by the Plan as necessary or desirable to consummate the Plan.

C.     *Sources of Consideration for Plan Distributions*

1.     <u>Cash on Hand</u>

The Reorganized Debtor shall fund Cash distributions under the Plan with the Cash Distribution Amount.

2.     <u>New Common Stock</u>

The issuance of the New Common Stock is authorized without the need for any further action by the Debtor or Reorganized Debtor.   On the Effective Date, Reorganized FGIC

Corporation will issue and distribute 100% of the shares of Outstanding New Common Stock to the Distribution Agent for the benefit of Holders of General Unsecured Claims.

All of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable. The distribution and issuance referred to in Article III shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each entity receiving such distribution or issuance.

Upon the Effective Date, in the event the Debtor determines that a shareholders' agreement is advisable, Reorganized FGIC Corporation shall enter into such an agreement with each entity that is to be a counterparty thereto and such agreement shall be deemed to be valid, binding and enforceable in accordance with its terms. Each Holder of New Common Stock shall be bound thereby, in each case without the need for execution by any party thereto other than Reorganized FGIC Corporation. Notwithstanding the foregoing, Holders of New Common Stock may be permitted to be signatories to the shareholders' agreement (if any), if they so desire.

D.    Corporate Existence

Except as otherwise provided in the Plan, the Debtor shall continue to exist after the Effective Date as a corporate entity, with all the powers of a corporation, pursuant to applicable law in the jurisdiction in which the Debtor is incorporated and pursuant to the certificate of incorporation and by-laws in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state or federal law).

E.    Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated in the Plan, on the Effective Date, all property of the Debtor's estate, all Causes of Action and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire or dispose of property and compromise or settle any Claims, Equity Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

F.    Cancellation of Securities and Agreements

On the later of the Effective Date and the date on which distributions are made pursuant to the Plan, except as otherwise specifically provided for in the Plan: (a) the obligations of the Debtor under the Credit Agreement, the Senior Notes Indenture and any other certificate, equity security, share, note, bond, indenture, purchase right, option, warrant or other instrument or document that directly or indirectly evidences or creates any indebtedness, obligation of, or

19

ownership interest in, the Debtor that gives rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents that evidence indebtedness, obligations of, or ownership interests in, the Debtor that are reinstated pursuant to the Plan), shall be cancelled as to the Debtor and the Reorganized Debtor shall not have any continuing obligations thereunder; and (b) the obligations of the Debtor pursuant, relating or pertaining to any agreements, indentures, certificates of designation, by-laws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options or other instruments or documents that evidence or create any indebtedness, obligations of, or ownership interests in, the Debtor (except such agreements, certificates, notes or other instruments that evidence indebtedness, obligations of, or ownership interests in, the Debtor that are specifically reinstated pursuant to the Plan) shall be released and discharged; *provided*, that, notwithstanding Confirmation or Consummation of the Plan, any such indenture or agreement that governs the rights of the Holder of a Claim shall, to the extent necessary, continue in effect solely for purposes of allowing the Holders of General Unsecured Claims to receive their distributions hereunder; *provided*, *further*, that the preceding proviso shall not affect the discharge of Claims or Equity Interests pursuant to the Bankruptcy Code, the Confirmation Order or the Plan and shall not result in any expense or liability to the Reorganized Debtor.

G.      *Surrender of Existing Securities*

On the Effective Date, the Senior Notes and all securities evidencing an Equity Interest in the Debtor shall be surrendered and shall be deemed extinguished.

H.      *Corporate Action*

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including:   (a) selection of the directors and officers for Reorganized FGIC Corporation; (b) the distribution of the New Common Stock; and (c) all other actions contemplated by the Plan (whether to occur before, on or after the Effective Date).

All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect without any requirement of further action by the security holders, directors or officers of the Debtor or the Reorganized Debtor.  On or prior to the Effective Date, as applicable, the appropriate officers of the Debtor or the Reorganized Debtor shall be authorized and, as applicable, directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor.  The authorizations and approvals contemplated by this Article V.H shall be effective notwithstanding any requirements under non-bankruptcy law.

I.      *Certificate of Incorporation and By-Laws*

Pursuant to section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor's Certificate of Incorporation will be amended to prohibit the issuance of non-voting equity securities.   After the Effective Date, the Reorganized Debtor may amend and restate its

Certificate of Incorporation and By-Laws as permitted by the laws of its state of incorporation and by its Certificate of Incorporation and By-Laws.

*J.*      *Stock Trading Restrictions*

The Reorganized Debtor's Certificate of Incorporation shall contain restrictions on the transfer of New Common Stock to minimize the likelihood of any potential adverse U.S. federal income tax consequences resulting from an ownership change (as defined in section 382 of the Internal Revenue Code) in the Reorganized Debtor. Pursuant to the Certificate of Incorporation, no person or entity shall be permitted to acquire additional New Common Stock unless such acquisition has been approved by the Reorganized FGIC Corp. Board. No person or entity that is a 5% shareholder (as defined in section 382 of the Internal Revenue Code) shall be entitled to dispose of New Common Stock unless such disposal has been approved by the Reorganized FGIC Corp. Board.

*K.*      *Post-Effective Date Recoveries*

To the extent the Reorganized Debtor receives any Cash payment in excess of $25,000 after the Effective Date on account of a tax refund, a dividend from a subsidiary or affiliate, on account of any other pre-petition liability owing to the Debtor or otherwise, the Reorganized Debtor shall take necessary corporate action to cause such Cash to be promptly distributed to holders of the New Common Stock.

*L.*      *Directors and Officers of Reorganized FGIC Corporation*

As of the Effective Date, the term of the current members of the board of directors of the Debtor shall expire. The board of directors of Reorganized FGIC Corporation shall consist of seven (7) members, the composition of which shall be the chief executive officer of the Debtor and six (6) members to be chosen by the Debtor, in consultation with the Administrative Agent and MBIA, which directors shall be reasonably acceptable to the New York State Insurance Department.

FGIC Corporation's officers immediately prior to the Effective Date shall serve as the initial officers of Reorganized FGIC Corporation on and after the Effective Date.

*M.*      *Effectuating Documents; Further Transactions*

On and after the Effective Date, Reorganized FGIC Corporation and the officers and members of the board of directors thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of Reorganized FGIC Corporation, without the need for any approvals, authorization or consents except for those expressly required pursuant to the Plan.

*N.*     *Section 1146 Exemption*

Pursuant to section 1146 of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, sales and use tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment.  Furthermore, upon entry of the Confirmation Order, the appropriate state and local governmental officials and administrative agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or governmental assessment.

*O.*     *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to the releases set forth in Article X.E below, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor.  No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against them.  The Debtor or Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the Effective Date.

Subject to the releases set forth in Article X.E below, the Reorganized Debtor reserves and shall retain the Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor.  The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order or approval of the Bankruptcy Court.

K&E 16329129

# ARTICLE VI.

# PROVISIONS GOVERNING DISTRIBUTIONS

*A.*     *Timing and Calculation of Distributions*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, then on the date that such Claim becomes an Allowed Claim or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim against the Debtor shall receive the full amount of the distributions provided in the Plan for Allowed Claims in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

Notwithstanding any provisions in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments or distributions shall be made with respect to a Disputed Claim until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. In the event there are Disputed Claims requiring adjudication and resolution, Reorganized FGIC Corporation shall establish appropriate reserves for potential payment of such Claims.

*B.*     *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.     <u>Delivery of Distributions in General</u>

Except as otherwise provided herein, the Debtor or the Reorganized Debtor, as applicable, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; *provided*, that the manner of such distributions shall be determined at the discretion of the Debtor or the Reorganized Debtor, as applicable; *provided*, *further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim filed by such Holder.

2.     <u>Delivery of Distributions to Prepetition Lenders</u>

The Administrative Agent shall be deemed to be the Holder of the Allowed Prepetition Lenders' Claim for purposes of the initial distribution to be made pursuant to this Plan. The Distribution Agent shall make the initial distribution of cash and New Common Stock on account of such Claim to, or on behalf of, the Administrative Agent and the Administrative Agent shall hold or direct such distributions for the benefit of the Prepetition Lenders, as applicable. The Administrative Agent shall be permitted to rely on the Register maintained by it on behalf of the Debtor pursuant to the Credit Agreement as of the Record Date and shall not

incur any liability as a result of such reliance.  As soon as practicable, the Administrative Agent shall arrange to deliver such distributions to, or on behalf of, such Prepetition Lenders pursuant to the Credit Agreement; *provided*, that the Administrative Agent shall retain all rights as Administrative Agent under the Credit Agreement in connection with delivery of distributions to the Prepetition Lenders.  To the extent any subsequent distributions are required to be made on account of the Prepetition Lender Claims or the New Common Stock received on account of such Claims, the Distribution Agent shall make any such subsequent distributions directly to each Prepetition Lender and the Administrative Agent shall provide a copy of such Register to facilitate such distributions.  For purposes of subsequent distributions, it will be the responsibility of each individual Prepetition Lender to apprise the Distribution Agent of any change in its holdings after the Record Date.

     3.     <u>Delivery of Distributions to Senior Noteholders</u>

     (a)     Distributions to Senior Noteholders

The Indenture Trustee shall be deemed to be the Holder of all Claims of the Senior Noteholders for purposes of distributions to be made hereunder.  The Distribution Agent shall make all distributions on account of such Claims to, or on behalf of, the Indenture Trustee and the Indenture Trustee shall hold or direct such distributions for the benefit of the Senior Noteholders, as applicable.  Notwithstanding any provision contained in this Plan to the contrary, the distribution provisions contained in the Senior Notes Indenture shall continue in effect to the extent necessary to make distributions pursuant to this Plan on account of the Senior Notes and shall terminate in full upon completion of all such distributions.  All payments to Senior Noteholders shall only be made to such Holders after the surrender by each such Holder of the certificates representing such Senior Notes, or in the event that such certificate is lost, stolen, mutilated or destroyed, upon the Holder's compliance with the requirements set forth above.  Upon surrender of such Senior Notes certificates, the Senior Notes shall be cancelled and destroyed.  As soon as practicable after surrender of the Senior Notes certificates, the Indenture Trustee shall distribute to the Holder thereof such Holder's Pro Rata share of the distribution; *provided*, that the Indenture Trustee shall retain all rights as Indenture Trustee under the Senior Notes Indenture in connection with delivery of distributions to the Senior Noteholders; *provided*, *further*, that the Debtor's obligations to make distributions in accordance with Article III shall be deemed satisfied upon delivery of distributions to the Indenture Trustee.

K&E 16329129

(b)     Holders as of the Distribution Notification Date

As of the close of business on the Distribution Notification Date:  (1) the Claims Register will be closed; (2) the transfer books and records of the Senior Notes as maintained by the Indenture Trustee or its agent shall be closed; and (3) any transfer of any Claim based on the Senior Notes or any interest therein shall be prohibited.  The Debtor, the Reorganized Debtor and the Indenture Trustee shall have no obligation to recognize any transfer of any Claim based on the Senior Notes occurring after the close of business on the Distribution Notification Date and shall instead be entitled to recognize and deal for all purposes under this Plan with only those Holders of record as of the close of business on the Distribution Notification Date.

4.      Distributions by Distribution Agent

The Debtor or the Reorganized Debtor, as applicable, shall have the authority, in its sole discretion, to enter into agreements with one or more Distribution Agents to facilitate the distributions required hereunder.  As a condition to serving as a Distribution Agent, a Distribution Agent must:  (a) affirm its obligation to facilitate the prompt distribution of any documents; (b) affirm its obligation to facilitate the prompt distribution of any recoveries or distributions required hereunder; and (c) waive any right or ability to setoff, deduct from or assert any lien or encumbrance against the distributions required hereunder to be distributed by such Distribution Agent.  The Debtor or the Reorganized Debtor, as applicable, may pay to the Distribution Agent all reasonable and documented fees and expenses of the Distribution Agent without the need for any approvals, authorizations, actions or consents.

5.      Minimum Distributions

Notwithstanding anything herein to the contrary, no Distribution Agent shall be required to make distributions or payments of less than $25 (whether Cash or otherwise) and shall not be required to make partial distributions or payments of fractions of dollars.  Whenever any payment or distribution of a fraction of a dollar or a share of New Common Stock or other means of distribution under the Plan would otherwise be called for, the actual payment or distribution will reflect a rounding of such fraction to the nearest whole dollar, share or other similar distribution item.

6.      Undeliverable Distributions

In the event that any distribution to any Holder of a Claim is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order of the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary) and the Claim of any Holder to such property or Equity Interest in property shall be discharged and forever barred.

7. <u>Distributions Withheld for Disputed Claims</u>

Until such time as all Disputed Claims are Allowed or disallowed, the Debtor shall reserve Cash or Common Stock in an amount equal to the distributions to which Holders of Disputed Claims would be entitled if all such Claims were to become Allowed Claims.

8. <u>Compliance with Tax Requirements</u>

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed by any governmental unit. All distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provisions in the Plan to the contrary, the Reorganized Debtor and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.

9. <u>Allocations</u>

For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

10. <u>No Postpetition Interest on Claims</u>

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claim against the Debtor and no Holder of any Claim against the Debtor shall be entitled to interest accruing on or after the Petition Date on any such Claim.

**ARTICLE VII.**

**PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS**

A. *Resolution of Disputed Claims*

1. <u>Allowance of Claims</u>

After the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim. All settled claims approved

prior to the Effective Date by a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019, or otherwise, shall be binding on all parties.

2.      Prosecution of Objections to Claims

After the Confirmation Date but before the Effective Date, the Debtor, and after the Effective Date until the applicable Claims Objection Bar Date, the Reorganized Debtor, shall have the exclusive authority to file objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without any further notice to, or action, order or approval of, the Bankruptcy Court. The Reorganized Debtor shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to, or action, order or approval of, the Bankruptcy Court.

3.      Claims Estimation

After the Confirmation Date but before the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including section 502(c) of the Bankruptcy Code, regardless of whether the Debtor or the Reorganized Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

4.      Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied or superseded may be expunged from the Claims Register by the Reorganized Debtor and any Claim that has been amended may be adjusted thereon by the Reorganized Debtor. The Reorganized Debtor may expunge or adjust such Claims without filing a claims objection and without any further notice to, or action, order or approval of, the Bankruptcy Court.

5.      Deadline to File Objections to Claims

Any objections to Claims shall be filed no later than the applicable Claims Objection Bar Date.

K&E 16329129

B. *Disallowance of Claims*

All Claims of any entity from which property is sought by the Debtor under sections 542, 543, 550 or 553 of the Bankruptcy Code, or that the Debtor or the Reorganized Debtor alleges is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, shall be disallowed if (1) the entity, on the one hand, and the Debtor or the Reorganized Debtor, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (2) such entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOFS OF CLAIM SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO, OR ACTION, ORDER OR APPROVAL OF, THE BANKRUPTCY COURT. HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT ON OR BEFORE THE LATER OF (1) THE CONFIRMATION HEARING AND (2) 45 DAYS AFTER THE APPLICABLE DEADLINE FOR FILING SUCH PROOFS OF CLAIM.**

C. *Amendments to Claims*

On or after the Effective Date, except as otherwise provided herein, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor and, to the extent such prior authorization is not received, any such new or amended Claim shall be deemed disallowed and expunged without any further notice to, or action, order or approval of, the Bankruptcy Court.

D. *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is filed prior to the Effective Date, such Claim shall be deemed a Disputed Claim and no payment or distribution provided under the Plan shall be made on account of such Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

E. *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions, if any, shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Distribution Agent shall provide to the Holder of such Allowed Claim the distribution, if any, to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim unless required under applicable bankruptcy law. After the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with

respect to any Claim, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order in the Chapter 11 Case, including the Confirmation Order, allowing such Claim. All settled claims approved prior to the Effective Date by a Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019, or otherwise, shall be binding on all parties.

After the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Claim or Equity Interest immediately prior to the Effective Date.

## ARTICLE VIII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. *Assumption and Rejection of Executory Contracts and Unexpired Leases*

      1.     Assumption and Rejection of
                <u>Executory Contracts and Unexpired Leases</u>

Each Executory Contract or Unexpired Lease shall be deemed automatically assumed in accordance with the provisions and requirements of sections 365 and 1123(b)(2) of the Bankruptcy Code as of the Effective Date, unless such Executory Contract or Unexpired Lease: (a) has been previously assumed or rejected by the Debtor pursuant to a Final Order of the Bankruptcy Court entered prior to the Effective Date; (b) is the subject of a motion to assume or reject pending as of the Effective Date; or (c) is listed on the schedule of "Rejected Executory Contracts and Unexpired Leases" in the Plan Supplement.

      2.     Approval of Assumption and Rejection of
                <u>Executory Contracts and Unexpired Leases</u>

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions or rejections of Executory Contracts or Unexpired Leases described in Article VIII.A.1 pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or rejection of such Executory Contract or Unexpired Lease, including objecting to the cure amount designated by the Debtor as payable in connection with an assumption, will be deemed to have consented to such assumption or rejection and agreed to the specified cure amount.

B. *Claims on Account of the Rejection of*
   *Executory Contracts or Unexpired Leases*

All Proofs of Claim arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan must be filed with the Bankruptcy Court and served upon the Debtor or the Reorganized Debtor, as applicable, no later than thirty (30) days after the earlier of

29

(a) entry of an order approving the rejection of such Executory Contract or Unexpired Lease or (b) the Effective Date.

Any entity that is required to file a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtor or the Reorganized Debtor or their estates and property and the Debtor and the Reorganized Debtor, their estates and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. As of the Effective Date, all such Claims shall be subject to the permanent injunction set forth in Article X.D hereof.

C.      *Procedures for Counterparties to Executory Contracts*
        *and Unexpired Leases Assumed Pursuant to the Plan*

A notice of the Effective Date, including notice regarding the assumption or rejection of Executory Contracts or Unexpired Leases, will be sent to all known Holders of a Claim. For known non-Debtor parties to Executory Contracts and Unexpired Leases assumed pursuant to the Plan, such notice or separate notices will be sent on or as soon as practicable after the Effective Date notifying such counterparties that such Executory Contracts and Unexpired Leases have been assumed pursuant to the Plan.

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. At least twenty (20) days prior to the Confirmation Hearing, where applicable, the Debtor shall provide counterparties to Executory Contracts and Unexpired Leases with notices of proposed assumptions and cure amounts as well as procedures for objecting thereto and resolution of such disputes by the Bankruptcy Court. Any objection by a counterparty to an Executory Contract to a proposed assumption or related cure amount must be filed, served and **actually received** by the Debtor at least five (5) days prior to the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such matters.

In the event of a dispute regarding: (a) the amount of any payments to cure such a default; (b) the ability of the Debtor or Reorganized Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract to be assumed; or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving any such dispute and approving the assumption. If an objection to cure is sustained by the Bankruptcy Court, the Debtor, at its sole option, may elect to reject such Executory Contract or Unexpired Lease in lieu of assuming it.

D.     *Survival of Corporate Indemnification Obligations*

The Debtor's indemnification obligations set forth in Article VIII of its by-laws existing as of the Petition Date shall be included in the Bylaws of the Reorganized Debtor.

All Claims of the Debtor's officers and directors for indemnity arising under the Debtor's certificate of incorporation or by-laws, applicable state law, specific agreement or any combination of the foregoing arising in respect of actions or omissions that occurred (a) prior to the Petition Date shall be discharged upon the Effective Date and shall be satisfied solely from the Debtor's and/or Reorganized Debtor's available directors and officers' insurance coverage and (b) after the Petition Date, but prior to the Effective Date (excluding Excluded Indemnification Claims) shall be Administrative Claims hereunder.  Excluded Indemnification Claims in respect of actions or omissions occurring after the Petition Date but prior to the Effective Date, shall be discharged upon the Effective Date and holders of Excluded Indemnification Claims shall not receive any distribution under the Plan on account of such Excluded Indemnification Claims.

After the Effective Date, the Reorganized Debtor shall not terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including any "tail policy") in effect on the Petition Date, with respect to actions or omissions occurring prior to the Effective Date and all directors and officers of the Debtor who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.     *Conditions*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof.

1.     The Confirmation Order, which shall provide that, among other things, the Debtor or the Reorganized Debtor, as appropriate, is authorized and directed to take all actions necessary or appropriate to consummate the Plan, shall have been entered and such order shall have become a Final Order.

2.     All documents and agreements necessary to implement the Plan shall have:  (a) all conditions precedent to such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements; (b) been tendered for delivery; and (c) been effected or executed.

3.     All actions, documents, certificates and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties, and, to the extent required, filed with and approved by applicable governmental units in accordance with applicable laws.

4.     The Reorganized Debtor shall have received the necessary regulatory approvals, including The New York State Insurance Department's approval of the change in ownership of Financial Guaranty Insurance Company resulting from the Consummation of the Plan.

5.     The Reorganized Debtor Funding Amount shall be no more than $400,000.

B.     *Waiver of Conditions*

The conditions to the Effective Date set forth in this Article may be waived by the Debtor, with the consent of the Administrative Agent and MBIA (which consent shall not be unreasonably withheld), without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

C.     *Effect of Non-Occurrence of Conditions to the Effective Date*

Unless otherwise agreed to by the Debtor, if the Effective Date does not occur prior to the one year anniversary of the Confirmation Date, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any claims by, or Claims against or Equity Interests in, the Debtor; (b) prejudice in any manner the rights of the Debtor or any Holders of Claims against or Equity Interests in the Debtor; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor or any Holders of Claims against or Equity Interests in the Debtor in any respect.

# ARTICLE X.

# SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

A.     *Compromise and Settlement*

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Equity Interests and controversies relating to the contractual, legal and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any distribution to be made on account of such Allowed Claim or Equity Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its estate and Holders of Claims and Equity Interests and is fair, equitable and reasonable.  In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to, or action, order or approval of, the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against it and Causes of Action against other entities.

### B. Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Equity Interests, and the respective distributions and treatments under the Plan, take into account and conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise; *provided*, that notwithstanding anything to the contrary contained in that certain Monitoring Fee Agreement by and between FGIC Corp. and The PMI Group, Inc., dated as of December 18, 2003, Dubel & Associates, LLC, as successor to The PMI Group, Inc., shall be entitled to an Allowed General Unsecured Claim in the amount of $10,500, which Claim shall be paid in full in Cash as a member of Class 5. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal or equitable subordination relating thereto.

### C. Discharge of Claims and Termination of Equity Interests

Pursuant to, and to the fullest extent permitted by, section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, the distributions, rights and treatment that are provided in the Plan shall be in full and final satisfaction, settlement, release and discharge, effective as of the Effective Date, of all Claims, Equity Interests and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Equity Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against or Equity Interests in the Debtor, the Reorganized Debtor or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Equity Interests, including demands, liabilities and Causes of Action that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim or Equity Interest based upon such Claim, debt, right or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Equity Interest based upon such Claim, debt, right or Equity Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such Claim or Equity Interest has accepted the Plan. Except as otherwise provided herein, any default by the Debtor with respect to any Claim or Equity Interest that existed immediately prior to or on account of the filing of the Chapter 11 Case shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Equity Interests subject to occurrence of the Effective Date.

### D. Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection therewith, on the Effective Date and concurrently with the applicable distributions made pursuant to Article III hereof, and, in the case of a Secured Tax Claim or Other Secured Claim, concurrently with satisfaction in full of the portion of the Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Debtor's estate shall be fully released and discharged and all of the right, title and interest of any Holder of such mortgages,

deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns.

E.    *Debtor Release*

**Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties in facilitating the expeditious reorganization of the Debtor and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, the Debtor, the Reorganized Debtor and any person seeking to exercise the rights of the Debtor's estate, including any successor to the Debtor or any estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, including those that the Debtor, the Reorganized Debtor, the Debtor's estate or the Debtor's Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's estate, the conduct of the Debtor's business, the Chapter 11 Case, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, Plan Supplement, Disclosure Statement and related agreements, instruments or other documents or upon any other act or omission, transaction or occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes criminal conduct, willful misconduct or gross negligence.**

**Notwithstanding anything herein to the contrary, the foregoing "Debtor Release" shall not operate to waive or release any Causes of Action of the Debtor:  (a) arising under any contract, instrument, agreement, release or document delivered pursuant to the Plan; (b) expressly set forth in and preserved by the Plan or related documents; or (c) arising under the Cost Sharing Agreement or the Tax Allocation Agreement.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes, by reference, each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by the Debtor Release; (c) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (d) fair, equitable and reasonable; (e) given and made after reasonable investigation by the Debtor and after notice and**

K&E 16329129

opportunity for hearing; and (f) a bar to the Debtor or the Reorganized Debtor asserting any claim released by the Debtor Release against any of the Released Parties.

F.    *Releasing Party Release*

Except as otherwise specifically provided in the Plan, for good and valuable consideration, including the service of the Released Parties in facilitating the expeditious reorganization of the Debtor and the implementation of the restructuring contemplated by the Plan, effective as of the Effective Date, the Releasing Parties (regardless of whether a Releasing Party is a Released Party) shall be deemed to forever release, waive and discharge the Released Parties of any and all claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or fixed, existing or hereafter arising, in law, at equity or otherwise, whether for tort, contract, violations of federal or state securities laws or otherwise, including those that the Debtor, the Reorganized Debtor, the Debtor's estate or the Debtor's Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Equity Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Debtor's estate, the conduct of the Debtor's businesses, the Chapter 11 Case, the purchase, sale or rescission of any security of the Debtor or the Reorganized Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of Claims and Equity Interests prior to or in the Chapter 11 Case, the negotiation, formulation or preparation of the Plan, Plan Supplement, Disclosure Statement and related agreements, instruments or other documents or upon any other act or omission, transaction or occurrence taking place on or before the Effective Date of the Plan, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes criminal conduct, willful misconduct or gross negligence.

Notwithstanding anything herein to the contrary, the foregoing "Releasing Party Release" does not release any post-Effective Date obligations of any party under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Releasing Party Release, which includes by reference each of the related provisions and definitions contained herein and further, shall constitute the Bankruptcy Court's finding that the Releasing Party Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by the Releasing Parties; (c) in the best interests of the Debtor and all Holders of Claims and Equity Interests; (d) fair, equitable and reasonable; (e) given and made after notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties asserting any Claim against any of the Released Parties that has been released by the Releasing Party Release.

K&E 16329129

*G.*     *Exculpation*

**Upon and effective as of the Effective Date, the Debtor and its directors, officers, attorneys, financial advisors and other professional advisors and agents will be deemed to have solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code.**

**Except with respect to any acts or omissions expressly set forth in and preserved by the Plan or related documents, the Exculpated Parties shall neither have nor incur any liability to any entity for any prepetition or postpetition act taken or omitted to be taken in connection with, arising from or relating in any way to, the Chapter 11 Case, including: (a) the operation of the Debtor's business during the pendency of this Chapter 11 Case; (b) formulating, negotiating, preparing, disseminating, implementing and/or effecting the Disclosure Statement and the Plan (including the Plan Supplement and any related contract, instrument, release or other agreement or document created or entered into in connection therewith); (c) the solicitation of votes for the Plan and the pursuit of Confirmation of the Plan; (d) the administration of the Plan and/or the property to be distributed under the Plan; (e) the offer and issuance of any securities under the Plan; and/or (f) any other prepetition or postpetition act taken or omitted to be taken in connection with, or in contemplation of, the restructuring of the Debtor.  In all respects, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its respective duties under, pursuant to or in connection with, the Plan.**

**Notwithstanding anything herein to the contrary, nothing in the foregoing exculpation provisions shall (a) exculpate any person or entity from any liability resulting from any act or omission constituting fraud, willful misconduct, gross negligence, criminal conduct, malpractice, misuse of confidential information that causes damages or ultra vires acts as determined by a Final Order or (b) limit the liability of the professionals of the Exculpated Parties to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).**

*H.*     *Injunction*

The satisfaction, release and discharge pursuant to this Article X of the Plan shall also act as an injunction against any person commencing or continuing any action, employment of process or act to collect, offset or recover any claim or Cause of Action satisfied, released or discharged under the Plan or the Confirmation Order to the fullest extent authorized or provided by the Bankruptcy Code, including sections 524 and 1141 thereof.

## ARTICLE XI.

## BINDING NATURE OF PLAN

**THIS PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER:  (A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN;**

K&E 16329129

**(B) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE CHAPTER 11 CASE OR; (C) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

## ARTICLE XII.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain the maximum legally permissible jurisdiction over the Chapter 11 Case and all entities with respect to all matters related to the Chapter 11 Case, the Debtor and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority of any Claim, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any Claim;

2.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

3.      resolve any matters related to the assumption, assignment or rejection of any Executory Contract to which the Debtor is party or with respect to which the Debtor may be liable and to adjudicate and, if necessary, liquidate, any Claims arising therefrom, including, without limitation, those matters related to any amendment to the Plan after the Effective Date to add Executory Contracts to the list of Rejected Contracts;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the date hereof or that may be commenced in the future and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, provided that the Reorganized Debtor shall reserve the right to commence actions in all appropriate forums and jurisdictions;

6.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, the Plan Supplement or the Disclosure Statement;

7.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

8.      hear and determine all Causes of Action that are pending as of the Effective Date

or that may be commenced in the future;

9.    issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

10.    resolve any cases, controversies, suits or disputes with respect to the releases by the Debtor, the exculpation and other provisions contained in Article X hereof and enter such orders or take such other actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

11.    enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

12.    resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

13.    enter an order concluding the Chapter 11 Case.

## ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

A.    *Modification of Plan*

Effective as of the date hereof and subject to the limitations and rights contained in the Plan:  (1) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before entry of the Confirmation Order; (2) after entry of the Confirmation Order, the Debtor or the Reorganized Debtor, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in the Plan in such a manner as may be necessary to carry out the purpose and intent of the Plan; and (3) the Debtor reserves the right to modify the Plan to implement the sale of all or substantially all of the assets of the Debtor pursuant to sections 363 and 1123 of the Bankruptcy Code, *provided*, the Debtors shall not amend or modify the Plan to extent that such amendment or modification affects the economic distributions provided for herein without the consent of the Administrative Agent and MBIA.

B.    *Revocation of Plan*

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if Confirmation Date does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or

release of any Claims by or against, or any Equity Interests in, the Debtor; (b) prejudice in any manner the rights of the Debtor or the Holders of Claims or Equity Interests; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or the Holders of Claims or Equity Interests.

C.      *Successors and Assigns*

The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

D.      *Reservation of Rights*

Except as expressly set forth herein, including with respect to votes cast to accept or reject the Plan, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained herein nor the taking of any action by the Debtor or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtor with respect to the Holders of Claims or Equity Interests or other entities; or (2) any Holder of a Claim or an Equity Interest or other entity before the Effective Date.

E.      *Section 1145 Exemption*

The offering, issuance and distribution of the New Common Stock, and any subsequent sales, resales, transfers or other distributions of any such securities, shall be exempt from any federal or state securities laws registration requirements to the fullest extent permitted by section 1145 of the Bankruptcy Code.

F.      *Payment of Statutory Fees*

The Reorganized Debtor shall pay all fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed or closed, whichever occurs first.

G.      *Section 1125(e) Good Faith Compliance*

The Debtor, the Reorganized Debtor, the Administrative Agent, the Indenture Trustee and each of their respective advisors and representatives shall be deemed to have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

H.      *Further Assurances*

The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims receiving distributions hereunder and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

I.    *Severability*

If, before Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable.   Such term or provision then will be applicable as altered or interpreted; *provided*, that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor; *provided*, *further*, that the Debtor may seek an expedited hearing before the Bankruptcy Court to address any objection to any such alteration or interpretation of the foregoing.   Notwithstanding any such order, alteration or interpretation by the Bankruptcy Court, the remainder of the terms and provisions of the Plan shall remain in full force and effect.   The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

J.    *Service of Documents*

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtor shall be sent by overnight mail to:

| Debtor | Proposed Counsel to the Debtor |
|---|---|
| FGIC Corporation<br>125 Park Avenue<br>New York, New York 10017<br>Attn.:   John S. Dubel<br>             A. Edward Turi, III | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Phone:  (212) 446 4800<br>Fax:     (212) 446-4900<br>Attn.:   Paul M. Basta<br>             Brian S. Lennon<br><br>             -and-<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Phone: (312) 862-2000<br>Fax:     (312) 862-2200<br>Attn.:   Patrick J. Nash, Jr. |
| **Clerk of the Bankruptcy Court** | **United States Trustee** |
| United States Bankruptcy Court<br>for the Southern District of New York<br>Alexander Hamilton Custom House<br>One Bowling Green<br>New York, New York 10004 | Office of the United States Trustee<br>for the Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn.:   Andrea B. Schwartz |

K&E 16329129

| Counsel for the Administrative Agent | Indenture Trustee |
|---|---|
| Morgan Lewis & Bockius LLP<br>101 Park Avenue<br>New York, New York 10178<br>Phone: (212) 309-6000<br>Fax:     (212) 309-6001<br>Attn.:   Richard S. Toder<br>         Michael A. Chapnick | Wilmington Trust FSB<br>166 Mercer Street, Suite 2-R<br>New York, New York 10012<br>Phone: (212) 941-4415<br>Fax:     (212) 343-1079<br>Attn.:   Adam Berman |
| **Counsel for MBIA Inc.** | **Counsel for the New York State Insurance Department** |
| DLA Piper LLP<br>1251 Avenue of the Americas<br>New York, New York, 10020<br>Phone: (212) 335-4500<br>Fax:     (212) 335-4501<br>Attn.:   H. Jeffrey Schwartz<br>         Bennett Silverberg | Fried, Frank, Harris, Shriver & Jacobson LLP<br>One New York Plaza<br>New York, New York 10004<br>Phone: (212) 859-8000<br>Fax:     (212) 859-4000<br>Attn.:   Bonnie Steingart |

K.      *Filing of Additional Documents*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

L.      *No Stay of Confirmation Order*

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e) and 7062.

**[*Remainder of Page Intentionally Left Blank*]**

K&E 16329129

Respectfully submitted, as of the date first set forth above,

By: _____
Name:    John S. Dubel
Title:    Chief Executive Officer,
         FGIC Corporation