Paul M. Basta
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

Patrick J. Nash, Jr. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FGIC CORPORATION,[1] | ) | Case No. 10-14215 (SMB) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**NOTICE OF HEARING ON DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF CURTIS, MALLET-PREVOST, COLT & MOSLE LLP AS CONFLICTS COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION *NUNC PRO TUNC* TO AUGUST 23, 2010**

**PLEASE TAKE NOTICE THAT** a hearing (the "Hearing") on the *Debtor's Application for Entry of an Order Authorizing the Employment and Retention of Curtis, Mallet-Prevost, Colt & Mosle LLP as Conflicts Counsel for the Debtor and Debtor in Possession Nunc Pro Tunc to August 23, 2010* (the "Application") will be held before the Honorable Stuart M. Bernstein of the United States Bankruptcy Court for the Southern District of New York (the

---

[1] The last four digits of the Debtor's tax identification number are 6474. The location of the Debtor's corporate headquarters is 125 Park Avenue, New York, New York 10017.

"Bankruptcy Court"), Alexander Hamilton Custom House, One Bowling Green, Room 723, New York, New York 10004, on **September 16, 2010 at 2:00 p.m (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to the Application must comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, must be set forth in a writing describing the bases therefor and be filed with the Bankruptcy Court electronically in accordance with General Order M-399 by registered users of the Bankruptcy Court's electronic case filing system[2] and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), Word Perfect, or any other Windows-based word processing format (in either case, with a hard copy delivered directly to Chambers). Any response or objection to the Application must also be served so as to be **actually received** no later than **September 9, 2010 at 4:00 p.m. (prevailing Eastern Time)** by all parties on (a) the Master Service List and (b) the 2002 List.[3]

---

[2] The User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website of the Bankruptcy Court.

[3] The Master Service List and the 2002 List are defined in the *Revised Order Establishing Certain Notice, Case Management and Administrative Procedures* [Docket No. 49]. Copies of the Master Service List and the 2002 List are available upon request of the Garden City Group, Inc. by calling 1-800-327-3667 and requesting a person familiar with the FGIC Corp. chapter 11 case or by e-mailing FGICInfo@gardencitygroup.com.

| | |
|---|---|
| New York, New York<br>Dated: August 30, 2010 | */s/ Brian S. Lennon*<br>Paul M. Basta, Esq.<br>Brian S. Lennon, Esq.<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York 10022-4611<br>Telephone: (212) 446-4800<br><br>- and -<br><br>Patrick J. Nash, Jr. (admitted *pro hac vice*)<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone: (312) 862-2000<br>Facsimile: (312) 862-2200<br><br>*Counsel to the Debtor*<br>*and Debtor in Possession* |

Paul M. Basta
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

   - and -

Patrick J. Nash (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FGIC CORPORATION,[1] | Case No. 10-14215 (SMB) |
| Debtor. | |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE EMPLOYMENT AND RETENTION OF
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP AS CONFLICTS
COUNSEL FOR THE DEBTOR, *NUNC PRO TUNC* TO AUGUST 23, 2010**

FGIC Corporation, as the debtor and debtor in possession in the above-captioned chapter 11 case ("FGIC Corp." or "Debtor"), files this application (the "Application"), for entry of an order, in substantially the form attached hereto as **Exhibit A**, authorizing the Debtor's employment and retention of Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis") as conflicts

---

[1] The last four digits of the Debtor's tax identification number are 6474.  The location of the Debtor's corporate headquarters is 125 Park Avenue, New York, New York 10017.

counsel for the Debtor, *nunc pro tunc* to August 23, 2010.  In support of this Application, the Debtor submits the declaration of Steven J. Reisman, a partner of Curtis (the "Reisman Declaration"), attached hereto as **Exhibit B**.  In further support of this Application, the Debtor respectfully states as follows:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

### Relief Requested

4. By this Application, the Debtor seeks the entry of an order authorizing the employment and retention of Curtis as its conflicts counsel in connection with the chapter 11 case, effective *nunc pro tunc* to August 23, 2010, in accordance with the terms and conditions set forth in that certain engagement letter between the Debtor and Curtis dated as of August 23, 2010 (the "Engagement Letter"), a copy of which is annexed as Exhibit 1 to **Exhibit A** attached hereto.

### Background

5. On August 3, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business

and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. As more fully described in the *Declaration of John S. Dubel Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First Day Motions* (the "Dubel Declaration"), FGIC Corp.'s key assets are its approximately $11.5 million in cash on hand and its 100% equity ownership in non-debtor Financial Guaranty Insurance Company ("FGIC," and together with FGIC Corp. and its other non-debtor affiliates, the "FGIC Group")—a monoline financial guaranty insurance company organized under the laws of the State of New York and regulated in accordance with the New York Insurance Law (the "NY Insurance Law"). Since 1983, FGIC has been a pioneer in the financial guaranty insurance industry by, among other things, being the first company to insure variable rate municipal bonds and leading the development of insurance products covering home equity loans.

7. Beginning in 2007, the U.S. housing market experienced an unprecedented downturn that was directly followed by a significant decline of the U.S. credit markets. Given FGIC's exposure to collateralized debt obligations of asset-backed securities and residential mortgage-backed securities, it incurred significant losses as a result. Indeed, in 2006, prior to the upheaval in the credit markets, FGIC reported surplus to policy holders of approximately $1.131 billion. Yet, as of March 31, 2010, FGIC maintained a surplus to policy holders of approximately negative $1.640 billion, far below the $65 million threshold level permitted under the NY Insurance Law. As a result of these losses, FGIC stopped paying dividends to FGIC Corp. in January 2008.

8. To remediate its balance sheet and restore its surplus to policy holders to the minimum level of $65 million required by the NY Insurance Law, FGIC, in consultation with its

primary regulator, the New York State Insurance Department (the "NYID"), implemented an aggressive surplus restoration plan (the "Surplus Restoration Plan"), which is more fully described in the Dubel Declaration.

9. In conjunction with the Surplus Restoration Plan, FGIC Corp. developed a plan of reorganization (the "Plan"), pursuant to which FGIC Corp.'s unsecured creditors, including holders of outstanding debt under FGIC Corp.'s prepetition revolving credit facility and holders of FGIC Corp.'s 6% Senior Notes due 2034, will receive their *pro rata* share of 100% of the equity in FGIC and a cash distribution. Existing equity interests will be cancelled. Perhaps most importantly, the Plan will preserve the FGIC Group's ability to use its significant net operating losses, which total more than $4 billion, to offset the significant cancellation of indebtedness income that the FGIC Group expects to incur as a result of the Surplus Restoration Plan and the Plan. Given these tax benefits, the FGIC Group and its stakeholders stand to benefit greatly from the success of the Surplus Restoration Plan and the chapter 11 Plan. FGIC Corp. intends to move swiftly through this case.

**Basis for Relief**

10. On August 25, 2010, the Court entered an order authorizing the Debtor to employ and retain Kirkland & Ellis LLP ("K&E") as its lead attorneys in this chapter 11 case [Docket No. 47]. The Debtor seeks to employ and retain Curtis to handle matters that are not appropriately handled by K&E or other counsel to the Debtor, because of actual or potential conflict of interest issues or, alternatively, matters which the Debtor requests be handled by Curtis.

11. The Debtor has been informed that Steven J. Reisman, a member of Curtis, as well as other members of, counsel to, and associates of Curtis who will be employed in this

chapter 11 case, are members in good standing of the Bar of the State of New York and the United States District Court for the Southern District of New York among others courts.

12. The Debtor has selected Curtis as conflicts counsel because the retention of Curtis will enhance the ability of K&E to represent the Debtor generally and assist it in carrying out its duties in the chapter 11 case. The Debtor believes that rather than resulting in any extra expense to the Debtor's estate, the retention of Curtis as conflicts counsel will promote the effective and economical representation of the Debtor in this chapter 11 case. K&E and Curtis will coordinate their efforts and function cohesively to ensure that the legal services provided to the Debtor by each firm are not duplicative. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtor requests that the Court approve the retention of Curtis as its conflicts counsel to perform services that will be necessary during this chapter 11 case in accordance with Curtis's normal hourly rates and policies in effect when Curtis renders the services or incurs the expenses.

13. Curtis has been involved in other significant chapter 11 cases where it served as conflicts counsel in this District. Curtis has found that the relationship works best when the debtors or their counsel promptly inform Curtis of any matter where there is involvement of another client of the relevant counsel's firm, even if the debtors' counsel are not adverse to that client. It is anticipated that as soon as Curtis is notified of a transaction, motion or litigation affecting a client of K&E, or such other counsel to the Debtor, where such counsel is adverse to their client, Curtis will be responsible for advising the Debtor on such transaction, motion or litigation as it affects such other counsel's client. This best serves the Debtor's fiduciary obligation to all creditors. For those matters in which the Debtor's other counsel are clearly

adverse to any client of such other counsel, Curtis will be responsible for advising the Debtor in connection with such matters.

14. In preparing for its representation of the Debtor in this chapter 11 case, Curtis has become familiar with the Debtor's business and many of the potential legal issues that may arise in the context of this chapter 11 case. The Debtor believes that Curtis is both well qualified and uniquely able to represent it as conflicts counsel in this chapter 11 case in an efficient and timely manner.

15. The employment of Curtis is appropriate and necessary to enable the Debtor to faithfully execute its duties in the chapter 11 case, and to implement the restructuring and/or reorganization of the Debtor.

## Scope of Services

16. Subject to this Court's approval, Curtis will render professional services to the Debtor for certain discrete matters where K&E or other counsel for the Debtor may not be able to act as a result of an actual or potential conflict of interest or where the Debtor, K&E or other counsel to the Debtor have requested that Curtis:

(a) advise the Debtor with respect to its powers and duties as debtor in possession in the continued management and operation of its businesses and properties;

(b) attend meetings and negotiate with representatives of creditors and other parties in interest;

(c) take necessary action to protect and preserve the Debtor's estate, including prosecuting actions on the Debtor's behalf, defending any action commenced against the Debtor and representing the Debtor's interests in negotiations concerning litigation in which the Debtor is involved, including objections to claims filed against the estate;

(d) prepare motions, applications, answers, orders, appeals, reports and papers necessary to the administration of the Debtor's estate;

(e) take any necessary action on behalf of the Debtor to obtain approval of a disclosure statement and confirmation of one or more chapter 11 plans;

(f) appear before the Court, any appellate courts and the United States Trustee, and protect the interests of the Debtor's estate before those Courts and the United States Trustee;

(g) consult with the Debtor regarding tax matters; and

(h) perform other necessary legal services and provide other necessary legal advice to the Debtor in connection with this case, including advice on corporate, litigation, intellectual property and regulatory matters.

17. The Debtor seeks to retain Curtis as its conflicts counsel because Curtis has extensive expertise, experience and knowledge in the field of debtors' and creditors' rights and business reorganization under chapter 11 of the Bankruptcy Code as well as other areas of the law where the Debtor may need legal advice. Curtis also possesses extensive experience in practicing before this Court and other bankruptcy courts throughout the United States.

18. Curtis has been actively involved in major bankruptcy cases throughout the United States, including some of the largest cases before this Court. For example, Curtis has been involved as conflicts/special counsel in *In re The Reader's Digest Ass'n, Inc., et al.*, No. 09-23529 (Bankr. S.D.N.Y. Sept. 17, 2009), *In re CIT Group inc., et al.*, No. 09-16565 (Bankr. S.D.N.Y. Nov. 24, 2009), *In re Lear Corp., et al.*, Case No. 09-14326 (Bankr. S.D.N.Y. July 31, 2009), *In re Charter Commc'ns, Inc., et al.*, No. 09-11435 (Bankr. S.D.N.Y. Apr. 15, 2009), *In re Star Tribune Holdings Corp., et al.*, No. 09-10244 (Bankr. S.D.N.Y. Feb. 6, 2009), *In re Bally Total Fitness of Greater N.Y., Inc., et al.*, No. 08-14818 (Bankr. S.D.N.Y. Dec. 22, 2008), *In re Lehman Brothers Holdings, Inc. et al.*, No. 08-13555 (Bankr. S.D.N.Y. Nov. 21, 2008), *In re Calpine Corp., et al.*, No. 05-60200 (Bankr. S.D.N.Y. Jan. 25, 2006), *In re Silicon Graphics, Inc., et al.*, No. 06-10977 (Bankr. S.D.N.Y. May 31, 2006), *In re Musicland Holding Corp., et al.*, Case No. 06-10064 (Bankr. S.D.N.Y. Feb. 21, 2006), *In re Nw. Airlines Corp., et al.*, No. 05-

17930 (Bankr. S.D.N.Y. Oct. 19, 2005) and *In re Lodgian, Inc., et al.*, No. 01-16345 (Bankr. S.D.N.Y. Mar. 13, 2002).

19. The Debtor believes that Curtis is both well-qualified and uniquely able to perform as conflicts counsel to the Debtor in the chapter 11 case in an effective, efficient and timely manner.

## Terms of Retention

20. The Debtor understands that Curtis intends to apply for compensation for professional services rendered in connection with this chapter 11 case, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines established by the Office of the U.S. Trustee (the "Guidelines"), and further orders of this Court, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges that Curtis incurs on the Debtor's behalf.

21. Pursuant to section 328(a) of the Bankruptcy Code, the Debtor may retain Curtis on any reasonable terms and conditions. The Debtor submits that the most reasonable terms and conditions are those on which Curtis is retained by clients on a regular basis in a competitive market for legal services. Therefore, the Debtor and Curtis have agreed that Curtis shall be paid its customary hourly rates that are in effect from time to time for services rendered, as set forth below and in the Reisman Declaration, and shall be reimbursed according to Curtis's customary reimbursement policies consistent with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, the Guidelines and such other procedures as may be fixed by order of this Court. Curtis's hourly rates are based on, among other things, the individual professional's level of expertise and experience.

22. The current hourly rates charged by Curtis for each of the above-referenced services to be provided on an hourly basis are, subject to change from time to time, $675 to $785 for partners, $525 to $595 for counsel, $290 to $575 for associates, $170 to $210 for paraprofessionals, $415 for managing clerks, and $55 to $325 for other support personnel.

23. These hourly rates are subject to periodic adjustments to reflect economic and other conditions. The rates set forth above are at a level designed to fairly compensate Curtis for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses. The hourly rates and corresponding rate structure to be utilized by Curtis in this case are equivalent to the hourly rate structure predominantly used by Curtis for bankruptcy, restructuring, insolvency and comparable matters, and similarly complex corporate, securities and litigation matters whether in court or otherwise, regardless of whether a fee application is required.

24. It is Curtis's policy to charge its clients for all expenses incurred in connection with the client's account. The expenses charged to clients include, among other things, telephone toll and other charges, mail and express mail charges, special or hand delivery charges, word and document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, messengers, couriers, postage and non-ordinary overhead expenses such as overtime for secretaries and others. Curtis will charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to Curtis's other clients but reduced and limited as necessary to comply with the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, the Guidelines and further orders of this Court. Curtis believes that it is more equitable to charge these expenses to the clients incurring such expenses, as opposed to increasing hourly rates and spreading the expenses among all clients.

25. Subject to the Court's approval, and in accordance with Sections 328(a), 330(a) and 331 of the Bankruptcy Code, the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules, the Guidelines and further orders of this Court, Curtis intends to apply to the Court for payment of compensation and reimbursement of expenses. Curtis shall submit with its fee applications detailed daily time entries for each individual in one-tenth (.10) of an hour increments explaining the services provided, as well as a categorized summary of all disbursements and expenses for which Curtis is seeking reimbursement.

26. Because Curtis was retained by the Debtor subsequent to the Petition Date, as of the date hereof the Debtor does not owe Curtis any amounts for legal services rendered before the Petition Date.

## Curtis's Disinterestedness

27. To the best of the Debtor's knowledge, and except as disclosed in the Reisman Declaration, Curtis does not hold or represent any interests adverse to the Debtor, its creditors, or any other party in interest, or their respective attorneys and accountants. Curtis is a "disinterested person," as that phrase is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtor's estate. Curtis's employment is necessary and in the best interests of the Debtor and the Debtor's estate. The Debtor has been informed that Curtis will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Curtis will supplement its disclosure to the Court, as required by Bankruptcy Rule 2014(a).

### Notice

28. The Debtor has provided notice of this Application by either electronic mail or facsimile and by overnight mail to: (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the administrative agent for the Debtor's prepetition revolving credit facility; (c) counsel to the indenture trustee for the Debtor's 6% Senior Notes due 2034; (d) counsel to MBIA Inc.; (e) counsel to the New York State Insurance Department; (f) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims; and (g) the Internal Revenue Service. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice need be provided.

### No Prior Request

29. No prior application for the relief requested herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, for the reasons set forth herein and in the Reisman Declaration, the Debtor respectfully requests that the Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtor to employ and retain Curtis as its conflicts counsel, effective *nunc pro tunc* to August 23, 2010 and (b) grant such other and further relief as it deems just and proper.

New York, New York
Dated: August 30, 2010

*/s/ John S. Dubel*
John S. Dubel
Chief Executive Officer
FGIC Corporation