Paul M. Basta
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

   - and -

Patrick J. Nash, Jr. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Counsel to the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FGIC CORPORATION,[1] | ) | Case No. 10-14215 (SMB) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**PLAN SUPPLEMENT**
**TO THE CHAPTER 11 PLAN OF REORGANIZATION OF FGIC CORPORATION**

     FGIC Corporation, as the debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), hereby files the following documents that comprise the Plan Supplement in connection with the *Chapter 11 Plan of Reorganization of FGIC Corporation* (the "Plan"):

     **Exhibit A**:  Certificate of Incorporation

     **Exhibit B**:  By-Laws

     **Exhibit C**:  Schedule of Assumed Executory Contracts and Unexpired Leases

---

[1]    The last four digits of the Debtor's tax identification number are 6474.  The location of the Debtor's corporate headquarters is 125 Park Avenue, New York, New York 10017.

**Exhibit D**:  List of Directors and Officers

**Exhibit E**:  Amended and Restated Cost Sharing Agreement

The hearing at which the Bankruptcy Court will consider Confirmation of the Plan (the "Confirmation Hearing") will commence at 2:00 p.m. prevailing Eastern Time on April 19, 2012, before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004.  **THE CONFIRMATION HEARING MAY BE CONTINUED FROM TIME TO TIME WITHOUT FURTHER NOTICE OTHER THAN IN OPEN COURT OR BY FILING A NOTICE OF ADJOURNMENT.**

**April 12, 2012 at 4:00 p.m.** prevailing Eastern Time is the deadline for objecting to confirmation of the Plan, including the Plan Supplement (unless otherwise extended by the Debtor or by order of the Court).

Any and all objections to the Plan or Plan Supplement must:  (a) be in writing; (b) conform to the Bankruptcy Rules; (c) set forth the name of the objector, the nature and amount of Claims or Equity Interests held or asserted by the objector against the Debtor; (d) state with particularity the basis for the objection and the specific grounds therefor; and (e) be filed with the Bankruptcy Court, together with proof of service thereof, and served upon and **actually received** by each of the following parties **no later than 4:00 p.m. prevailing Eastern Time on April 12, 2012**:

| Debtor | Counsel to the Debtor |
|---|---|
| FGIC Corporation<br>125 Park Avenue<br>New York, New York 10017<br>Attn.:    John S. Dubel<br>           A. Edward Turi, III | Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, New York 10022<br>Phone:   (212) 446 4800<br>Fax:      (212) 446-4900<br>Attn.:    Paul M. Basta |

| | |
|---|---|
| | Brian S. Lennon<br><br>-and-<br><br>Kirkland & Ellis LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Phone:   (312) 862-2000<br>Fax:       (312) 862-2200<br>Attn.:    Patrick J. Nash, Jr. |
| **Clerk of the Bankruptcy Court** | **United States Trustee** |
| United States Bankruptcy Court<br>for the Southern District of New York<br>Alexander Hamilton Custom House<br>One Bowling Green<br>New York, New York 10004 | Office of the United States Trustee<br>for Region 2<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn.:  Andrea B. Schwartz |
| **Counsel for the Administrative Agent** | **Indenture Trustee** |
| Morgan Lewis & Bockius LLP<br>101 Park Avenue<br>New York, New York 10178<br>Phone:   (212) 309-6000<br>Fax:       (212) 309-6001<br>Attn.:    Andrew Gottfried | Wilmington Trust FSB<br>166 Mercer Street, Suite 2-R<br>New York, New York 10012<br>Phone:   (212) 941-4415<br>Fax:       (212) 343-1079<br>Attn.:    Adam Berman |
| **Counsel for the Creditors' Committee** | **Counsel for the Plan Sponsor** |
| Morrison & Foerster LLP<br>1290 Avenue of the Americas<br>New York, NY 10104-0050<br>Phone: (212) 468-8000<br>Fax:       (212) 468-7900<br>Attn.:    Anthony Princi<br>             John Pintarelli | Cravath, Swaine & Moore LLP<br>825 Eighth Avenue<br>New York, New York 10019<br>Phone: (212) 474-1000<br>Fax:       (212) 474-3700<br>Attn:   Richard Levin |

If you have questions regarding the procedures and requirements for voting on the Plan, would like to obtain paper copies of the Disclosure Statement, Plan, Plan Supplement, or related documents (excluding ballots) or if you have questions about your claim, objecting to the Plan, or this chapter 11 case generally, please contact Debra Wolther at the Voting and Solicitation Agent at  1-800-327-3664  or at the following address:  The Garden City Group, Inc., Attn.: FGIC Corp. Ballot Processing Center, 5151 Blazer Pkwy, Suite A, Dublin, OH 43017.  You also

may obtain these documents and any other pleadings filed in the Debtor's chapter 11 case for a

fee via PACER at:  https://ecf.nysb.uscourts.gov.


New York, New York                          /s/ Brian S. Lennon
Dated:  April 5, 2012                        _____
                                             Paul M. Basta, Esq.
                                             Brian S. Lennon, Esq.
                                             KIRKLAND & ELLIS LLP
                                             601 Lexington Avenue
                                             New York, New York  10022
                                             Telephone:     (212) 446-4800
                                             Facsimile:     (212) 446-4900

                                                   - and -

                                             Patrick J. Nash, Jr. (admitted *pro hac vice*)
                                             KIRKLAND & ELLIS LLP
                                             300 North LaSalle
                                             Chicago, Illinois  60654
                                             Telephone:     (312) 862-2000
                                             Facsimile:     (312) 862-2200


                                             *Counsel to the Debtor*
                                             *and Debtor in Possession*

## **Exhibit A**

Certificate of Incorporation

### THIRD AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

### OF

### FGIC CORPORATION

Under Sections 242 and 245 of the
Delaware General Corporation Law

FGIC CORPORATION, a corporation organized and existing under the laws of the State of Delaware (the "Corporation"), does hereby certify that:

1.     The name of the Corporation is FGIC Corporation.

2.     The original Certificate of Incorporation of the Corporation was filed with the Secretary of State of the State of Delaware on June 1, 1983.

3.     The Corporation filed a Restated Certificate of Incorporation with the Secretary of State of the State of Delaware on May 27, 1986 that was subsequently amended by the filing of Certificates of Amendment with the Secretary of State of the State of Delaware on each of July 17, 1986, November 21, 1990, and January 15, 1993.

4.     On December 18, 2003, in the manner prescribed by Sections 242 and 245 of the General Corporation Law of the State of Delaware (the "DGCL"), the certificate of incorporation, as previously restated and amended as aforesaid, was amended and restated by an Amended and Restated Certificate of Incorporation by resolutions adopted by the Board of Directors and the stockholders of the Corporation pursuant to Sections 141 and 228 of the DGCL, which Amended and Restated Certificate of Incorporation was subsequently amended on March 16, 2004 and October 26, 2005.

5.     In implementation of the amendment and restatement of the certificate of incorporation of the Corporation made on December 18, 2003, (i) all outstanding shares of Common Stock, $0.01 par value per share, of the Corporation automatically and without any action on the part of the Corporation or the holder of any capital stock thereof, were reclassified into an equal number of shares of Class A Common Stock, $0.01 par value per share, of the Corporation, and (ii) 2,346 shares of Senior Participating Mandatorily Convertible Modified Preferred Stock of the Corporation, $0.01 par value per share, were issued, in each case as authorized by the Amended and Restated Certificate of Incorporation.

6.     On October 2, 2008, in the manner prescribed by Sections 242 and 245 of the DGCL, the certificate of incorporation, as previously restated and amended as aforesaid, was amended and restated for a second time by an Amended and Restated Certificate of Incorporation (the "Second Amended and Restated Certificate") by resolutions adopted by the Board of Directors and the stockholders of the Corporation pursuant to Sections 141 and 228 of the DGCL, which Second Amended and Restated Certificate was subsequently amended on November 4, 2009 and July 29, 2010.

1

7. On August 3, 2010, the Corporation filed a voluntary petition for relief with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") (*In re FGIC Corporation*, Ch. 11 Case No. 10-14215 (SMB)). On [DATE], 2012, in the manner prescribed by Sections 242 and 245 of the DGCL, the certificate of incorporation, as previously restated and amended as aforesaid, was amended and restated by this Third Amended and Restated Certificate of Incorporation (this "Third Amended and Restated Certificate"). This Third Amended and Restated Certificate was duly adopted by resolutions of the Board of Directors of the Corporation pursuant to Sections 141 and 228 of the DGCL and pursuant to the authority granted to the Corporation under Section 303 of the DGCL to put into effect and carry out the transactions contemplated by that certain Chapter 11 Plan of FGIC Corporation (the "Plan"), filed with the Bankruptcy Court on February 3, 2012, as confirmed on [DATE] by order of the Bankruptcy Court (the "Confirmation Order").

8. In implementation of this Third Amended and Restated Certificate and pursuant to the Plan and the Confirmation Order, on [DATE], 2012, automatically and without any action on the part of the Corporation or the holder of any capital stock thereof: (i) all outstanding shares of Class A Common Stock, $0.01 par value per share, of the Corporation, and all 2,346 shares of Senior Participating Mandatorily Convertible Modified Preferred Stock of the Corporation, $0.01 par value per share, were cancelled and deemed surrendered and extinguished, (ii) 4,999 shares of Creditor New Class A Common Stock, $0.01 par value per share, were issued, and (iii) one share of Class B Common Stock (the "Plan Sponsor Stock") was issued to the FGIC Corporation Plan Sponsor Stock Trust, as the designee of Financial Guaranty Insurance Company, a New York corporation ("FGIC"). The Plan Sponsor Stock entitles its holder to certain consent rights, which consent may be withheld in its sole discretion, including consent rights with respect to the dissolution or commencement of any insolvency or restructuring proceeding of the Corporation.

9. The text of the Corporation's certificate of incorporation, as heretofore restated and amended, is hereby amended and restated to read as set forth in full as follows:

[[NYCORP:3338374v6:3142d: 04/05/2012--04:30 p]]

# THIRD AMENDED AND RESTATED CERTIFICATE OF INCORPORATION

## OF

## FGIC CORPORATION

ARTICLE FIRST:   <u>Name of Corporation</u>.   The name of the corporation is FGIC Corporation (the "<u>Corporation</u>").

ARTICLE SECOND:   <u>Delaware Office and Registered Agent</u>.   The address of the registered office of the Corporation in the State of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington 19808, County of New Castle.   The name of the Corporation's registered agent for service of process at such address is the Corporation Service Company.

ARTICLE THIRD:   <u>Purpose</u>.   The nature of the business or purposes of the Corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware (the "<u>DGCL</u>").   The Corporation shall possess and exercise all the powers and privileges granted by the DGCL, by any other law, and by this Third Amended and Restated Certificate of Incorporation (this "<u>Third Amended and Restated Certificate</u>"), together with any powers incidental thereto as far as such powers and privileges are necessary or convenient to the conduct, promotion, or attainment of the purposes of the Corporation, except to the extent provided herein.

ARTICLE FOURTH:   <u>Capital Stock</u>.   The total number of shares of capital stock which the Corporation is authorized to issue is 5,000 shares, of which 4,999 shares shall be classified as Creditor New Class A Common Stock, par value $0.01 per share (the "<u>Creditor New Common Stock</u>"), and one share shall be classified as Class B Common Stock, par value $0.01 per share (the "<u>Plan Sponsor Stock</u>," and together with the Creditor New Common Stock, the "<u>New Common Stock</u>").   The Corporation is not authorized to issue any non-voting equity securities in contravention of section 1123(a)(6) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>").

## PART I

### Creditor New Common Stock

Section 1.   <u>Designation</u>.   The authorized shares of Creditor New Common Stock of the Corporation were issued automatically, and without any action on the part of the Corporation or the holder of any capital stock thereof, pursuant to that certain Chapter 11 Plan of the Corporation (the "<u>Plan</u>"), filed with the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") on February 3, 2012, as confirmed on [DATE] by order of the Bankruptcy Court (the "<u>Confirmation Order</u>").   The number of shares constituting the Creditor New Common Stock shall be 4,999.

Section 2.   <u>Rank</u>.   Except as expressly provided in this <u>Part I</u> or as otherwise required by the DGCL, the Plan, or the Confirmation Order, all shares of Creditor New Common Stock shall have the same powers, privileges, preferences, and relative participating, optional, or other

special rights, and the qualifications, limitations, or restrictions thereof, and shall be identical to each other in all respects.

Section 3.    Voting Powers.

(a)    Except as otherwise provided by this Third Amended and Restated Certificate (including Part II of this Article Fourth) or the DGCL, the entire voting power of the stockholders of the Corporation shall be vested in and may be exercised by only the holders of the New Common Stock, and at every meeting of the stockholders or for every action to be taken by written consent, holders of the New Common Stock shall vote or consent together as a single class.  Every holder of New Common Stock shall be entitled to one vote for each share held in the name of such holder in the stock records of the Corporation.  Irrespective of the class vote requirements set forth in Section 242(b)(2) of the DGCL, every reference in this Third Amended and Restated Certificate or the Bylaws to a majority or other proportion of the stock entitled to vote on a matter shall refer to such stock voting as a single class, unless such reference explicitly requires otherwise.

(b)    Certain Limitations on Voting Rights.  Notwithstanding any provision of the DGCL or any other law, or any other provision of this Third Amended and Restated Certificate, without the consent of the holder of the Plan Sponsor Stock, the Corporation shall not, directly or indirectly, including, without limitation, by means of or as a result of a merger or other transaction, (i) amend, change, alter, or otherwise modify (x) the rights, preferences, or privileges of the Plan Sponsor Stock set forth in this Third Amended and Restated Certificate or the Bylaws or (y) this Section 3(b); (ii) increase the authorized number of shares of Plan Sponsor Stock or authorize or issue any class or series of capital stock (whether by issuance, sale, reclassification, recapitalization, merger, or otherwise), including Creditor New Common Stock, having rights, preferences, or privileges that would conflict with, alter, or impair those of the Plan Sponsor Stock set forth in this Third Amended and Restated Certificate or the Bylaws; or (iii) commence or consent to the commencement of a bankruptcy, liquidation, insolvency, restructuring or similar proceeding for the Corporation,  liquidate or dissolve the Corporation or otherwise take any action in furtherance of any such proceeding, liquidation or dissolution (any such action described in clause (i), (ii), or (iii), a "Restricted Action").  The Corporation shall provide the holder of the Plan Sponsor Stock with at least 60 days advance notice before requiring the holder of the Plan Sponsor Stock to give or withhold its consent with respect to one of the Restricted Actions set forth in this Section 3(b) of this Part I of Article Fourth.  If the holder of the Plan Sponsor Stock fails to give its consent to any action within 60 days of receiving notice from the Corporation, the holder of the Plan Sponsor Stock shall be deemed to have withheld its consent to such action.

Section 4.    Reissuance.  The Corporation may not reissue shares of Creditor New Common Stock that have been retired or cancelled in any manner, including treasury shares retired.

[[NYCORP:3338374v6:3142d: 04/05/2012--04:30 p]]

PART II

Plan Sponsor Stock

Section 1.    Designation.    The Plan Sponsor Stock was issued to the FGIC Corporation Plan Sponsor Stock Trust (the "Trust"), as the designee of FGIC, pursuant to the Plan and the Confirmation Order.  The number of shares constituting the Plan Sponsor Stock shall be 1.

Section 2.    Dividends and Distributions Upon Liquidation, Dissolution, or Winding Up.  The Plan Sponsor Stock shall not entitle its holder to receive any dividend or distribution upon the liquidation, dissolution, or winding-up of the affairs of the Corporation.

Section 3.    Voting Powers.    The share of Plan Sponsor Stock shall have the same number of votes as one share of Creditor New Common Stock.  Irrespective of the class vote requirements set forth in Section 242(b)(2) of the DGCL, the Plan Sponsor Stock and Creditor New Common Stock will vote together as a single class on all matters subject to a vote of the New Common Stock, except as described in this Third Amended and Restated Certificate.

Section 4.    Consent Rights.    The Plan Sponsor Stock shall entitle its holder to consent rights with regards to the Restricted Actions, as set forth in Section 3(b) of Part I of this Article Fourth.

PART III

Restrictions on Transfer

Section 5.    Purpose.    It is in the best interests of the Corporation and its shareholders that certain restrictions on the transfer or other disposition of Corporation Securities (including shares of Creditor New Common Stock) be established, as more fully set forth in this Part III of this Article Fourth, as any such transfer or disposition may threaten the preservation of certain tax attributes.

Section 6.    Definitions.    As used in this Part III of this Article Fourth, the following capitalized terms shall have the following respective meanings (and any references to any portions of Treasury Regulation Section 1.382-2T shall include any successor provisions):

"Acquire" means the acquisition, directly or indirectly, of ownership of Corporation Securities by any means, including, without limitation, (i) the exercise of any rights under any option, warrant, convertible security, pledge or other security interest or similar right to acquire shares, (ii) the entering into of any swap, hedge or other arrangement that results in the acquisition of any of the economic benefits of ownership of Corporation Securities, or (iii) any other acquisition or transaction treated under Section 382 of the Code as a direct or indirect acquisition (including the direct or indirect acquisition of an ownership interest in a Substantial Holder) of ownership of such Corporation Securities. The terms "Acquires" and "Acquisition" shall have the same meaning, *mutatis mutandis*.

"Code" means the Internal Revenue Code of 1986, as amended.

5

"Corporation Securities" means (i) shares of Creditor New Common Stock, (ii) any other interests that would be treated as "stock" of the Corporation pursuant to Treasury Regulation Section 1.382-2T(f)(18), and (iii) warrants, rights or options (including within the meaning of Treasury Regulation Section 1.382-4(d)(9)) to purchase Corporation Securities.

"Disposition" means, with respect to any Person other than the Corporation, the sale, transfer, exchange, assignment, liquidation, conveyance, pledge, abandonment, or other disposition or transaction treated under Section 382 of the Code as a direct or indirect disposition or transfer (including the disposition of an ownership interest in a Substantial Holder).  A "Disposition" also shall include the creation or grant of an option (including an option within the meaning of Treasury Regulation Section 1.382-4(d)(9)).

"Effective Date" means the effective date of the Plan, which shall be the date of filing of this Third Amended and Restated Certificate.

"Exchange Act" means the United States Securities Exchange Act of 1934, as amended, and the rules and regulations of the United States Securities and Exchange Commission promulgated thereunder.

"FGIC" means Financial Guaranty Insurance Company, a New York corporation.

"FGIC Board" means the Board of Directors of FGIC.

"Percentage Stock Ownership" means percentage stock ownership as determined in accordance with Treasury Regulation Section 1.382-2T(g), (h) (without regard to the rule that treats stock of an entity as to which the constructive ownership rules apply as no longer owned by that entity), (j) and (k).

"Person" means an individual, corporation, estate, trust, association, limited liability company, partnership, joint venture or similar organization or "entity" within the meaning of Treasury Regulation Section 1.382-3 (including, without limitation, any group of Persons treated as a single entity under such regulation).

"Substantial Holder" means a Person (including, without limitation, any group of Persons treated as a single "entity" within the meaning of Treasury Regulation Section 1.382-3) holding, owning, or having any right in Corporation Securities, whether as of the Effective Date, after giving effect to the Plan, or thereafter, representing a Percentage Stock Ownership (including indirect and constructive ownership, as determined under applicable Treasury Regulations) in the Corporation of at least [4.5%].

"Tax Benefits" means the net operating loss carryovers, capital loss carryovers, general business credit carryovers, alternative minimum tax credit carryovers and foreign tax credit carryovers, as well as any "net unrealized built-in loss" within the meaning of Section 382 of the Code, of the Corporation or any direct or indirect subsidiary thereof.

"Transfer" means any direct or indirect Acquisition or Disposition of Corporation Securities.

6

"Treasury Regulation" means a Treasury regulation promulgated under the Code.

Section 7.    Ownership Limitations.

(a)    From and after the Effective Date, no Person shall be permitted to make a Transfer, whether in a single transaction (with any transactions occurring on the same day being treated as a single transaction) or series of related transactions, and any such purported Transfer will be *void ab initio*, (i) to the extent that after giving effect to such purported Transfer (A) the purported transferee or any other Person by reason of the purported transferee's Acquisition would become a Substantial Holder, or (B) the Percentage Stock Ownership of a Person that, prior to giving effect to the purported Transfer, is a Substantial Holder would be increased, or (ii) if the purported transferor is a Substantial Holder and has a Percentage Stock Ownership in the Corporation of more than [4.99]% before giving effect to such purported Transfer, (any such purported transfer described in clause (i) or (ii), a "Prohibited Transfer").

(b)    The restrictions set forth in Section 3(a) of this Part III shall not apply to a proposed Transfer if the transferor or the transferee obtains written consent to the proposed Transfer from a majority of the Board of Directors of the Corporation and a majority of the FGIC Board.    Each of the Board of Directors of the Corporation and the FGIC Board may, independently of the other and within its respective sole discretion, determine whether or not to grant its written consent to the proposed Transfer.    As a condition to granting its consent, each of the Board of Directors of the Corporation and the FGIC Board may, in its respective sole discretion, require and/or obtain (at the expense of the transferor and/or transferee) such representations from the transferor and/or transferee, such opinions of counsel to be rendered by counsel selected by (or acceptable to) the Board of Directors of the Corporation or the FGIC Board, as the case may be, and such other advice, in each case as to such matters as the Board of Directors of the Corporation or the FGIC Board determines in its respective sole discretion is appropriate.

(c)    Notwithstanding anything to the contrary herein or in the Bylaws, from and after the Effective Date, no Person shall Transfer any Corporation Securities if the Corporation reasonably determines (i) that such Transfer, whether in a single transaction (with any transactions occurring on the same day being treated as a single transaction) or series of related transactions, would, if effected (after taking into account any other proposed Transfers that have been authorized by the Corporation but not yet made), result in the Corporation having 500 or more holders of record (as such concept is defined for purposes of Section 12(g) of the Exchange Act and any relevant rules promulgated thereunder) of any class of capital securities of the Corporation, (ii) that such Transfer would, if effected, require the Corporation to register the Corporation Securities under the Exchange Act, unless, in any such case, at the time of such Transfer, the Corporation is already subject to the reporting obligations under Sections 13 and 15(d) of the Exchange Act with respect to its capital securities or (iii) that the proposed transferee is a competitor, unless such Transfer is otherwise approved by the Board of Directors. Any Transfer referenced in the immediately preceding sentence consummated without such required consent of the Corporation shall be null and *void ab initio*.

Section 8.    Treatment of Excess Securities.

7

(a)    No employee or agent of the Corporation shall record any Prohibited Transfer, and the purported transferee of a Prohibited Transfer (the "Purported Transferee") shall not be recognized as a stockholder of the Corporation for any purpose whatsoever in respect of the Corporation Securities that are the subject of the Prohibited Transfer (the "Excess Securities"). Until the Excess Securities are acquired by another Person in a Transfer that is not a Prohibited Transfer, the Purported Transferee shall not be entitled with respect to such Excess Securities to any rights of stockholders of the Corporation, including, without limitation, the right to vote such Excess Securities and to receive dividends or distributions, whether liquidating or otherwise, in respect thereof. Once the Excess Securities have been acquired in a Transfer that is in accordance with this Section 4 of this Part III and is not a Prohibited Transfer, such Corporation Securities shall cease to be Excess Securities.

(b)    If either the Board of Directors of the Corporation or the FGIC Board determines that a Prohibited Transfer has occurred, the Prohibited Transfer and, if applicable, the recording of such Prohibited Transfer, shall be void *ab initio* and have no legal effect and, upon written demand by the Corporation, the Purported Transferee shall transfer or cause to be transferred any certificate or other evidence of ownership of the Excess Securities within the Purported Transferee's possession or control, together with any dividends or other distributions that were received by the Purported Transferee from the Corporation with respect to the Excess Securities (the "Prohibited Distributions"), to an agent designated by the Board of Directors of the Corporation (the "Agent").

(1)    In the case of a Prohibited Transfer described in Section 3(a)(i) of this Part III, the Agent shall thereupon identify and sell to a buyer or buyers, the Excess Securities transferred to it in one or more arm's-length transactions (including over a national securities exchange on which the Corporation Securities may be traded, if possible); provided, however, that the Agent, in its sole discretion, shall effect such sale or sales in an orderly fashion and shall not be required to effect any such sale within any specific time frame if, in the Agent's discretion, such sale or sales would disrupt the market for the Corporation Securities or otherwise would adversely affect the value of the Corporation Securities. If the Purported Transferee has resold the Excess Securities before receiving the Corporation's demand to surrender the Excess Securities to the Agent, the Purported Transferee shall be deemed to have sold the Excess Securities for the Agent, and shall be required to transfer to the Agent any Prohibited Distributions and the proceeds of such sale, except to the extent that both the Corporation and FGIC grant written permission to the Purported Transferee to retain a portion of such sale proceeds not exceeding the amount that the Purported Transferee would have received from the Agent pursuant to Section 4(c) of this Part III if the Agent, rather than the Purported Transferee, had resold the Excess Securities; or

(2)    In the case of a Prohibited Transfer described in Section 3(a)(ii) of this Part III, the purported transferor of Excess Securities in such Prohibited Transfer (the "Purported Transferor") shall also deliver to the Agent the sale proceeds from the Prohibited Transfer (in the form received, i.e., whether in cash or other property), and the Agent shall thereupon identify and sell any non-cash consideration to a buyer or buyers in one or more arm's-length transactions (including over a national securities exchange, if possible). If the Purported Transferee is determinable (other than with respect to a

8

transaction entered into through the facilities of a national securities exchange), the Agent shall, to the extent possible, return the Prohibited Distributions to the Purported Transferor, and shall reimburse the Purported Transferee from the sale proceeds received from the Purported Transferor (or the proceeds from the disposition of any non-cash consideration) for the cost (to the Purported Transferee) of any Excess Securities returned in accordance with Section 4(c) of this Part III.  If the Purported Transferee is not determinable, or to the extent the Excess Securities have been resold and thus cannot be returned to the Purported Transferor, the Agent shall use the proceeds to acquire on behalf of the Purported Transferor, in one or more arm's-length transactions (including over a national securities exchange on which the Corporation Securities may be traded, if possible), an equal amount of Corporation Securities in replacement of the Excess Securities sold; provided, however, that, to the extent the amount of proceeds is not sufficient to fund the purchase price of such Corporation Securities and the Agent's costs and expenses (as described in Section 4(c) of this Part III), the Purported Transferor shall promptly fund such amounts upon demand by the Agent.

(c)     The Agent shall apply any proceeds or any other amounts received by it by and in accordance with Section 4 of this Part III as follows:

(1)     *first*, such amounts shall be paid to the Agent to the extent necessary to cover its costs and expenses incurred in connection with its duties hereunder;

(2)     *second*, any remaining amounts shall be paid to the Purported Transferee, up to the amount paid by the Purported Transferee for the Excess Securities; and

(3)     *third*, any remaining amounts, subject to the limitations imposed by the following proviso, shall be paid to one or more organizations qualifying under Section 501(c)(3) of the Code (or any comparable successor provision) ("Section 501(c)(3)") selected by the Board of Directors of the Corporation; provided, however, that if the Excess Securities (including any Excess Securities arising from a previous Prohibited Transfer not sold by the Agent in a prior sale or sales) represent a [4.5]% or greater Percentage Stock Ownership interest in the Corporation, then such remaining amounts shall be paid to two or more organizations qualifying under Section 501(c)(3) selected by the Board of Directors of the Corporation such that no organization qualifying under Section 501(c)(3) shall possess Percentage Stock Ownership in the Corporation in excess of [4.49]%.

The recourse of any Purported Transferee in respect of any Prohibited Transfer shall be limited to the amount payable to the Purported Transferee pursuant to clause (2) above. Except as may be required by law, in no event shall the proceeds of any sale of Excess Securities pursuant to this Part III inure to the benefit of the Corporation.

(d)     If the Purported Transferee or the Purported Transferor fails to surrender the Excess Securities (as applicable) or the proceeds of a sale thereof to the Agent within thirty (30) days from the date on which the Corporation makes a demand pursuant to Section 4(b) of

this Part III, then the Corporation shall use its best efforts to enforce the provisions hereof, including the institution of legal proceedings to compel the surrender.

Section 9.    Bylaws; Legends; Compliance.

(a)    The Bylaws may make appropriate provisions to effectuate the requirements of this Part III.

(b)    All certificates (including global certificates) representing Corporation Securities shall bear a conspicuous legend as follows:

"THE TRANSFER OF THE SECURITIES REPRESENTED HEREBY IS SUBJECT TO SIGNIFICANT OWNERSHIP AND TRANSFER RESTRICTIONS PURSUANT TO PART III OF ARTICLE FOURTH OF THE THIRD AMENDED AND RESTATED CERTIFICATE OF INCORPORATION OF FGIC CORPORATION.   THE CORPORATION WILL FURNISH A COPY OF ITS CERTIFICATE OF INCORPORATION TO THE HOLDER OF RECORD OF THIS CERTIFICATE WITHOUT CHARGE UPON A WRITTEN REQUEST ADDRESSED TO THE CORPORATION AT ITS PRINCIPAL PLACE OF BUSINESS."

(c)    The Corporation shall have the power to make appropriate notations upon its stock transfer records and instruct any transfer agent, registrar, securities intermediary or depository with respect to the requirements of this Part III for any uncertificated Corporation Securities or Corporation Securities held in an indirect holding system.

(d)    The FGIC Board shall have the power to decide all matters necessary for determining compliance with this Part III, including, without limitation, determining (A) the identification of Substantial Holders, (B) whether a Transfer is a Prohibited Transfer, (C) the Percentage Stock Ownership of any Substantial Holder or other Person, (D) whether an instrument constitutes a Corporation Security, (E) the amount (or fair market value) due to a Purported Transferee pursuant to clause (2) of Section 4(c) of this Part III, and (F) any other matter that the FGIC Board determines to be relevant.   The good faith determination of the FGIC Board on such matters shall be conclusive and binding for the purposes of this Part III.

ARTICLE FIFTH:    Governance.

Section 10.    Governing Role of the Board of Directors; Special Meetings of Stockholders; Bylaws.

(a)    Governing Role of the Board of Directors.   Pursuant to Section 141(a) of the DGCL the business and affairs of the Corporation shall be managed by or under the direction of a governing body referred to as the Board of Directors, the members of which (and any committee thereof) shall be designated and classified, and shall have such powers, voting rights and limitations thereon (which powers, voting rights and limitations thereon may be different from those of other members of the Board of Directors), as set forth in this Article Fifth.

10

(b)      <u>Special Meetings of Stockholders</u>.  Except as otherwise required by law, special meetings of stockholders may be called only by the Board of Directors, or as otherwise provided in the Bylaws of the Corporation.

(c)      <u>Bylaws</u>.  In furtherance and not in limitation of the powers conferred upon the Board of Directors by law, the Board of Directors is expressly authorized to adopt, alter, or amend the Bylaws of the Corporation by a vote of a majority of the entire Board of Directors.

Section 11.      <u>Directors</u>.

(a)      <u>Composition of the Board of Directors</u>.  The Board of Directors shall at all times consist of three members, subject to vacancies that may from time to time result, and shall at all times consist of directors that also serve on the Board of Directors of FGIC ("<u>FGIC's Board</u>") or as then-current executive officers of FGIC.  Upon the effective date of the Plan, the Board of Directors shall consist of the following three directors: (i) [Director 1], (ii) [Director 2], and (iii) [Director 3].  The directors shall be divided into three classes designated as Class I, Class II and Class III, respectively, and each class shall consist of one member.  Directors shall be assigned to each class in accordance with a resolution or resolutions adopted by the Board of Directors.  At the first annual meeting of stockholders following the adoption of this Third Amended and Restated Certificate, the term of office of the Class I director shall expire and a Class I director shall be elected for a full term of three years.  At the second annual meeting of stockholders following the adoption of this Third Amended and Restated Certificate, the term of office of the Class II director shall expire and a Class II director shall be elected for a full term of three years.  At the third annual meeting of stockholders following the adoption of this Third Amended and Restated Certificate, the term of office of the Class III director shall expire and a Class III director shall be elected for a full term of three years.  At each succeeding annual meeting of stockholders, a director shall be elected for a full term of three years to succeed the director of the class whose term expires at such annual meeting.  Each director shall hold office until his or her term of office expires, and until his or her successor shall have been elected and qualified, or until his or her earlier resignation or removal, or until such director is no longer serving as a director on FGIC's Board or as a then-current executive officer of FGIC.  At each annual meeting of stockholders, the then-current Board of Directors shall nominate candidates to succeed those directors whose terms have expired.  Such candidates shall consist only of directors serving on FGIC's Board or as then-current executive officers of FGIC, and may include then-current directors serving on the Board of Directors (the "<u>Candidates</u>").  The then-current Board of Directors shall nominate at least two Candidates for each director whose term has expired.  The Corporation's stockholders shall elect new directors, by a majority of those voting, only from the Candidates nominated by the then-current Board of Directors in accordance with the terms of this paragraph.  All elections of directors shall be by written ballot, unless otherwise provided by a resolution or resolutions adopted by the Board of Directors.  Persons not meeting the requirements of Candidates described above shall not be eligible to serve as members of the Board of Directors at any time.

(b)      <u>Vacancies on the Board of Directors</u>.  If any seat on the Board of Directors becomes vacant, the remaining directors shall nominate at least two Candidates (as defined in <u>Section 2(a)</u> of this <u>Article Fifth</u>) to fill such vacancy, and the Corporation's

11

stockholders shall elect one Candidate by majority vote at the next annual meeting of stockholders, or at special meeting of stockholders called pursuant to Section 1(b) of this Article Fifth.  Persons not meeting the requirements of Candidates described in Section 2(a) of this Article Fifth shall not be eligible to serve as members of the Board of Directors at any time.  Any director elected in accordance with this Section 2(b) shall hold office until the next annual meeting of stockholders and until such director's successor shall have been elected and qualified, or until such director's earlier resignation or removal, or until such director is no longer serving as a director on FGIC's Board.

(c)    Avoidance.  The Board of Directors shall not take any action or fail to take any action, directly or indirectly, including, without limitation, by means of or as a result of a merger or other transaction, which would have the effect of eliminating, limiting, restricting, avoiding or otherwise modifying the effect of the provisions set forth in this Article Fifth (e.g. by creating a holding company structure if the certificate of incorporation or similar document of such holding company does not contain equivalent provisions).

Section 12.    Voting of Directors.  All decisions of the Board of Directors shall be made by a majority vote of the directors present at a meeting of the Board of Directors at which a majority of the directors serving on the Board of Directors (a "Quorum") is present.

ARTICLE SIXTH:    Amendment.  In addition to any requirements of law and any other provision of this Third Amended and Restated Certificate, the Corporation reserves the right to amend, alter, or repeal any provision contained in this Third Amended and Restated Certificate, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are subject to this reservation; provided, however, without the consent of the holder of the Plan Sponsor Stock, the Corporation shall not (i) amend, change, alter, or otherwise modify the rights, preferences, or privileges of the Plan Sponsor Stock set forth in this Third Amended and Restated Certificate or the Bylaws or (ii) increase the authorized number of shares of Plan Sponsor Stock or authorize or issue any class or series of capital stock (whether by issuance, sale, reclassification, recapitalization, merger, or otherwise), including Creditor New Common Stock, having rights, preferences, or privileges that would directly conflict with, alter, or impair those of the Plan Sponsor Stock set forth in this Third Amended and Restated Certificate or the Bylaws.

ARTICLE SEVENTH:    Limitation on Liability.  To the fullest extent that the DGCL or any other law of the State of Delaware as it exists or as it may hereafter be amended permits the limitation or elimination of the liability of directors, no director of the Corporation shall be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.   No amendment or repeal of this Article Seventh shall apply to or have any adverse effect on any right or protection in favor of, or any limitation or elimination of the liability of, any director of the Corporation existing prior to or at the same time of such amendment or repeal with respect to any acts or omissions occurring prior to such amendment or repeal.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, FGIC Corporation has caused this Third Amended and Restated Certificate of Incorporation to be executed this ___ day of _____, 2012.

FGIC CORPORATION

BY:   _____
        Name: John S. Dubel
        Title:   Chief Executive Officer

**<u>Exhibit B</u>**

By-Laws

# FGIC CORPORATION

## BY-LAWS

### ARTICLE I – STOCKHOLDERS

Section 1.        Annual Meeting.

An annual meeting of the stockholders, for the election of directors to succeed those whose terms expire and for the transaction of such other business as may properly come before the meeting, shall be held at such place, on such date, and at such time as the Board of Directors shall each year fix, which date shall be within thirteen (13) months of the last annual meeting of stockholders.

Section 2.        Special Meetings.

Special meetings of the stockholders, for any purpose or purposes prescribed in the notice of the meeting, may be called by the director or directors authorized to call such meetings as set forth in the Third Amended and Restated Certificate of Incorporation (the "Third Amended and Restated Certificate") and shall be held at such place, on such date, and at such time as they or he or she shall fix.

Section 3.        Notice of Meetings.

Notice of the place, if any, date, and time of all meetings of the stockholders and the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such meeting, shall be given, not less than ten (10) nor more than sixty (60) days before the date on which the meeting is to be held, to each stockholder entitled to vote at such meeting, except as otherwise provided herein or required by law (meaning, here and hereinafter, as required from time to time by the Delaware General Corporation Law (the "DGCL") or the Third Amended and Restated Certificate).

When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place, if any, thereof, and the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken; provided, however, that if the date of any adjourned meeting is more than thirty (30) days after the date for which the meeting was originally noticed, or if a new record date is fixed for the adjourned meeting, notice of the place, if any, date, and time of the adjourned meeting and the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting, shall be given in conformity herewith.    At any adjourned meeting, any business may be transacted which might have been transacted at the original meeting.

Section 4.        Quorum.

At any meeting of the stockholders, the holders of a majority of all of the shares of the stock entitled to vote at the meeting, in each case present in person or by proxy, shall

constitute a quorum for purposes of the meeting, unless or except to the extent that the presence of a larger number may be required by law.   With respect to a stockholder vote on any matter at any such meeting, a majority of the shares of the stock entitled to vote on such matter, in each case present in person or by proxy, shall constitute a quorum entitled to take action with respect to that vote on such matter.   If a quorum with respect to the meeting shall fail to attend any meeting of the stockholders, the chairman of the meeting or the holders of a majority of the shares of stock entitled to vote who are present, in person or by proxy, may adjourn the meeting to another place, if any, date, or time.   If a quorum with respect to any stockholder vote shall fail to attend any meeting of the stockholders, the chairman of the meeting shall adjourn the meeting solely with respect to such vote to another place, if any, date, or time.

Notwithstanding Section 3 of this ARTICLE I, notice of the place, date, and time of each such meeting following an adjourned meeting shall be given to stockholders by mailing written notice not less than five (5) days before the meeting or by telegraphing or telexing or by facsimile or other electronic transmission of the same not less than twenty-four (24) hours before the meeting.   If a quorum shall fail to attend at three duly called consecutive meetings of the stockholders over the course of at least three days, and any stockholders entitled to vote sought to vote on the same matter(s) at each such meeting of the stockholders, a "quorum" at the next such duly called meeting of the stockholders and solely for purposes of the vote on such matter(s) shall mean a majority of all of the shares of the stock entitled to vote on such matter(s).

Section 5.    <u>Organization</u>.

Such person as the Board of Directors may have designated or, in the absence of such a person, the Chief Executive Officer of the Corporation or, in his or her absence, such person as may be chosen by the holders of a majority of the shares entitled to vote who are present, in person or by proxy, shall call to order any meeting of the stockholders and act as chairman of the meeting.   The Secretary of the Corporation shall be the secretary of the meeting or, in his or her absence, the secretary of the meeting shall be such person as the chairman of the meeting appoints.

Section 6.    <u>Conduct of Business</u>.

The chairman of any meeting of stockholders shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of discussion as seem to him or her in order.   The date and time of the opening and closing of the polls for each matter upon which the stockholders will vote at the meeting shall be announced at the meeting.

Section 7.    <u>Proxies and Voting</u>.

At any meeting of the stockholders, every stockholder entitled to vote may vote in person or by proxy authorized by an instrument in writing or by a transmission permitted by law filed in accordance with the procedure established for the meeting.   Any copy, facsimile telecommunication or other reliable reproduction of the writing or transmission created pursuant to this paragraph may be substituted or used in lieu of the original writing or transmission for any and all purposes for which the original writing or transmission could be used, provided that such

2

copy, facsimile telecommunication or other reproduction shall be a complete reproduction of the entire original writing or transmission.    The Corporation may, and to the extent required by law, shall, in advance of any meeting of stockholders, appoint one or more inspectors to act at the meeting and make a written report thereof.    The Corporation may designate one or more alternate inspectors to replace any inspector who fails to act.    If no inspector or alternate is able to act at a meeting of stockholders, the person presiding at the meeting may, and to the extent required by law, shall, appoint one or more inspectors to act at the meeting.    Each inspector, before entering upon the discharge of his or her duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability.    Every vote taken by ballots shall be counted by an inspector or inspectors appointed by the chairman of the meeting.

Unless otherwise provided in the Third Amended and Restated Certificate, all matters shall be determined by a majority of the votes cast affirmatively or negatively.

Section 8.    Stock List; Inspection of Books and Records.

A complete list of stockholders entitled to vote at any meeting of stockholders, arranged in alphabetical order for each class of stock and showing the address of each such stockholder and the number of shares registered in his or her name, shall be open to the examination of any such stockholder, for any purpose germane to the meeting, for a period of at least ten (10) days prior to the meeting, during ordinary business hours, at the principal place of business of the Corporation.    If the meeting is to be held at a place, then such list shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder, for any purpose germane to the meeting, who is present at such meeting.    Such list shall presumptively determine the identity of the stockholders entitled to vote at the meeting and the number of shares held by each of them.

In addition, any stockholder, in person or by attorney or other agent, shall pursuant to, and in accordance with, Section 220 of the DGCL, upon written demand under oath stating the purpose thereof and upon execution of a confidentiality agreement in a form reasonably satisfactory to such stockholder and the Corporation, have the right during the usual hours for business to inspect for any proper purpose, and to make copies and extracts from, the Corporation's stock ledger, a list of its stockholders, and its and its subsidiaries', as applicable, books and records.

Section 9.    Consent of Stockholders in Lieu of Meeting.

Unless otherwise provided in the Third Amended and Restated Certificate, any action required to be taken at any annual or special meeting of stockholders of the Corporation, or any action which may be taken at any annual or special meeting of the stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted, and shall be delivered to the Corporation by delivery to its registered office in Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which

3

proceedings of meetings of stockholders are recorded.   Delivery made to the Corporation's registered office shall be made by hand or by certified or registered mail, return receipt requested.

Every written consent shall bear the date of signature of each stockholder who signs the consent and no written consent shall be effective to take the corporate action referred to therein unless, within sixty (60) days of the date the earliest dated consent is delivered to the Corporation, a written consent or consents signed by a sufficient number of holders to take action are delivered to the Corporation in the manner prescribed in the first paragraph of this Section. A telegram, cablegram, facsimile or other electronic transmission consenting to an action to be taken and transmitted by a stockholder or proxyholder, or by a person or persons authorized to act for a stockholder or proxyholder, shall be deemed to be written, signed and dated for the purposes of this Section to the extent permitted by law.   Any such consent shall be delivered in accordance with Section 228(d)(1) of the DGCL, as the same exists or may hereafter be amended.

Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used, provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing.

## ARTICLE II – BOARD OF DIRECTORS

Section 1.   Composition of the Board of Directors.

The composition of the Board of Directors shall be as set forth in Section 2(a) of Article FIFTH of the Third Amended and Restated Certificate.

Section 2.   Vacancies.

Vacancies on the Board of Directors shall be filled as set forth in Section 2(b) of Article FIFTH of the Third Amended and Restated Certificate.

Section 3.   Regular Meetings.

Regular meetings of the Board of Directors shall be held at such place or places, on such date or dates, and at such time or times as shall have been established by the Board of Directors and publicized among all directors.   A notice of each regular meeting shall not be required.

Section 4.   Special Meetings.

Special meetings of the Board of Directors may be called by one-third (1/3) of the directors then in office (rounded up to the nearest whole number), or by the Chief Executive Officer and shall be held at such place, on such date, and at such time as they or he or she shall fix.   Notice of the place, date, and time of each such special meeting shall be given to each director by whom it is not waived by mailing written notice not less than five (5) days before the meeting or by telegraphing or telexing or by facsimile or other electronic transmission of the same not less than twenty-four (24) hours before the meeting.   Unless otherwise indicated in the notice thereof, any and all business may be transacted at a special meeting.

4

Section 5.        Quorum.

At any meeting of the Board of Directors, a Quorum shall have the meaning given to such term in Section 3 of Article FIFTH of the Third Amended and Restated Certificate.   If a Quorum shall fail to attend any meeting of the Board of Directors, a majority of those present shall adjourn the meeting to another place, date, or time and notice of the place, date, and time of each such meeting shall be given to each director by whom it is not waived by mailing written notice not less than five (5) days before the meeting or by telegraphing or telexing or by facsimile or the electronic transmission of the same not less than twenty-four (24) hours before the meeting.

Section 6.        Participation in Meetings By Conference Telephone.

Members of the Board of Directors, or of any committee thereof, may participate in a meeting of such Board of Directors or committee by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other and such participation shall constitute presence in person at such meeting.

Section 7.        Conduct of Business.

At any meeting of the Board of Directors, business shall be transacted in such order and manner as the Board of Directors may from time to time determine, and all matters shall be determined by the vote of a majority of the directors present, except as otherwise provided herein or in the Third Amended and Restated Certificate or required by law.   Action may be taken by the Board of Directors without a meeting if all members thereof consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board of Directors.   Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 8.        Compensation and Expenses of Directors.

Directors, as such, may receive, pursuant to resolution of the Board of Directors, fixed fees and other compensation for their services as directors, including, without limitation, their services as members of committees of the Board of Directors; provided that directors each receive equivalent compensation, other than the Chief Executive Officer or any other employee of the Corporation serving as a director, who shall not receive compensation for serving as a director, and the Chairman of the Board, who may, subject to the terms of the Third Amended and Restated Certificate, receive additional compensation for serving as Chairman.   The Corporation shall reimburse the directors for all reasonable out-of-pocket expenses of the directors in connection with the performance of their duties as directors.

Section 9.        Organization.

Meetings of the Board of Directors shall be presided over by the Chairman of the Board, if any, or in the absence of the Chairman of the Board, the Vice Chairman of the Board, if any, or in the absence of the Vice Chairman of the Board, by a chairman chosen by a majority of the directors present at the meeting.   The Secretary shall act as secretary of the meeting, but in

the absence of the Secretary, the chairman of the meeting may appoint any person to act as secretary of the meeting.

## ARTICLE III – COMMITTEES

Section 10.    Committees of the Board of Directors.

The Board of Directors may from time to time designate committees of the Board of Directors, with such lawfully delegable powers and duties as it thereby confers, to serve at the pleasure of the Board of Directors and shall, for those committees and any others provided for herein, subject to the requirements of the Third Amended and Restated Certificate, elect a director or directors to serve as the member or members, designating, if it desires, other directors as alternate members who may replace any absent or disqualified member at any meeting of the committee.    In the absence or disqualification of any member of any committee and any alternate member in his or her place, the member or members of the committee present at the meeting and not disqualified from voting, whether or not he or she or they constitute a quorum, may by unanimous vote appoint another member of the Board of Directors to act at the meeting in the place of the absent or disqualified member.    The Board of Directors may designate, among other committees, a compensation committee, an audit committee, a credit committee, an investment committee and a nomination committee.    Subject to the Third Amended and Restated Certificate, except as provided by a resolution adopted by a majority of the whole Board of Directors, no such committee shall have or be delegated any authority of the Board of Directors and shall only be authorized to make recommendations to the Board of Directors.

Section 11.    Conduct of Business.

Each committee may determine the procedural rules for meeting and conducting its business and shall act in accordance therewith, except as otherwise provided herein or required by law.    Adequate provision shall be made for notice to members of all meetings; one-third (1/3) of the members shall constitute a quorum unless the committee shall consist of one (1) or two (2) members, in which event one (1) member shall constitute a quorum; and all matters shall be determined by a majority vote of the members present.    Action may be taken by any committee without a meeting if all members thereof consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions are filed with the minutes of the proceedings of such committee.    Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

## ARTICLE IV – OFFICERS

Section 12.    Generally.

The officers of the Corporation shall at all times consist of individuals that also serve on the Board of Directors of Financial Guaranty Insurance Company ("FGIC") or as then-current executive officers of FGIC, and shall consist of a Chief Executive Officer, a President, one or more Vice Presidents, a Secretary, a Treasurer and such other officers as may from time to time be appointed by the Board of Directors.    Officers shall be elected by the Board of Directors, which shall consider that subject at its first meeting after every annual meeting of

6

stockholders.    Each officer shall hold office until his or her successor is elected and qualified or until his or her earlier resignation or removal.    Any number of offices may be held by the same person.

Section 13.    <u>Chief Executive Officer</u>.

The Chief Executive Officer shall be the Chief Executive Officer of the Corporation.    Subject to the provisions of these By-laws and the Third Amended and Restated Certificate and to the direction of the Board of Directors, he or she shall have the responsibility for the general management and control of the business and affairs of the Corporation and shall perform all duties and have all powers which are commonly incident to the office of chief executive or which are delegated to him or her by the Board of Directors.    He or she shall have power to sign all stock certificates, contracts and other instruments of the Corporation which are authorized and shall have general supervision and direction of all of the other officers, employees and agents of the Corporation.

Section 14.    <u>President</u>.

The President shall have such powers and duties as may be delegated to him or her by the Board of Directors or the Chief Executive Officer.    The President shall perform the duties of the Chief Executive Officer in the event of the Chief Executive Officer's absence or disability.

Section 15.    <u>Vice President</u>.

Each Vice President shall have such powers and duties as may be delegated to him or her by the Board of Directors, the Chief Executive Officer, or the President.

Section 16.    <u>Treasurer</u>.

The Treasurer shall have the responsibility for maintaining the financial records of the Corporation.    He or she shall make such disbursements of the funds of the Corporation as are authorized and shall render from time to time an account of all such transactions and of the financial condition of the Corporation.    The Treasurer shall also perform such other duties as the Board of Directors, the Chief Executive Officer, or the President may from time to time prescribe.

Section 17.    <u>Secretary</u>.

The Secretary shall issue all authorized notices for, and shall keep minutes of, all meetings of the stockholders and the Board of Directors.    He or she shall have charge of the corporate books and shall perform such other duties as the Board of Directors, the Chief Executive Officer, or the President may from time to time prescribe.

Section 18.    <u>Delegation of Authority</u>.

The Board of Directors may from time to time delegate the powers or duties of any officer to any other officers or agents, notwithstanding any provision hereof.

7

Section 19.    <u>Removal</u>.

Except as set forth in the Third Amended and Restated Certificate, any officer of the Corporation may be removed at any time, with or without cause, by the Board of Directors.

Section 20.    <u>Action with Respect to Securities of Other Corporations</u>.

Unless otherwise directed by the Board of Directors, the Chief Executive Officer or any other officer of the Corporation shall have power to vote and otherwise act on behalf of the Corporation, in person or by proxy, at any meeting of stockholders of or with respect to any action of stockholders of any other corporation in which this Corporation may hold securities and otherwise to exercise any and all rights and powers which this Corporation may possess by reason of its ownership of securities in such other corporation.

ARTICLE V – STOCK

Section 21.    <u>Certificates of Stock</u>.

Each stockholder shall be entitled to a certificate signed by, or in the name of the Corporation by, the Chief Executive Officer, the President or a Vice President, and by the Secretary or an Assistant Secretary, or the Treasurer or an Assistant Treasurer, certifying the number of shares owned by him or her. Any or all of the signatures on the certificate may be by facsimile.

Section 22.    <u>Transfers of Stock</u>.

Transfers of stock shall be made only upon the transfer books of the Corporation kept at an office of the Corporation or by transfer agents designated to transfer shares of the stock of the Corporation.   Any purported transfer of stock not permitted by Part III of Article FOURTH of the Third Amended and Restated Certificate will be null and void, and neither the Corporation nor any of its transfer agents shall record on the transfer books of the Corporation or otherwise any such purported transfer.   Except where a certificate is issued in accordance with Section 4 of ARTICLE V of these By-laws, an outstanding certificate for the number of shares involved shall be surrendered for cancellation before a new certificate is issued therefor.

Section 23.    <u>Record Date</u>.

In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders, or to receive payment of any dividend or other distribution or allotment of any rights or to exercise any rights in respect of any change, conversion, or exchange of stock or for the purpose of any other lawful action, the Board of Directors may fix a record date, which record date shall not precede the date on which the resolution fixing the record date is adopted and which record date shall not be more than sixty (60) nor less than ten (10) days before the date of any meeting of stockholders, nor more than sixty (60) days prior to the time for such other action as hereinbefore described; provided, however, that if no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given or, if notice is waived, at the

8

close of business on the day next preceding the day on which the meeting is held, and, for determining stockholders entitled to receive payment of any dividend or other distribution or allotment of rights or to exercise any rights of change, conversion or exchange of stock or for any other purpose, the record date shall be at the close of business on the day on which the Board of Directors adopts a resolution relating thereto.

A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

In order that the Corporation may determine the stockholders entitled to consent to corporate action without a meeting (including by telegram, cablegram or other electronic transmission as permitted by law), the Board of Directors may fix a record date, which shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall be not more than ten (10) days after the date upon which the resolution fixing the record date is adopted.   If no record date has been fixed by the Board of Directors and no prior action by the Board of Directors is required by the DGCL, the record date shall be the first date on which a consent setting forth the action taken or proposed to be taken is delivered to the Corporation in the manner prescribed by Section 9 of ARTICLE I hereof. If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by the DGCL with respect to the proposed action by consent of the stockholders without a meeting, the record date for determining stockholders entitled to consent to corporate action without a meeting shall be at the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

Section 24.    <u>Lost, Stolen, or Destroyed Certificates</u>.

In the event of the loss, theft or destruction of any certificate of stock, another may be issued in its place pursuant to such regulations as the Board of Directors may establish concerning proof of such loss, theft or destruction and concerning the giving of a satisfactory bond or bonds of indemnity.

Section 25.    <u>Regulations</u>.

The issue, transfer, conversion, and registration of certificates of stock shall be governed by such other regulations as the Board of Directors may establish; <u>provided</u>, <u>however</u> that any purported issue, transfer, conversion, or registration of certificates of stock not permitted by the Third Amended and Restated Certificate will be null and void.

<u>ARTICLE VI</u> – <u>NOTICES</u>

Section 26.    <u>Notices</u>.

If mailed, notice to stockholders shall be deemed given when deposited in the mail, postage prepaid, directed to the stockholder at such stockholder's address as it appears on the records of the Corporation.   Without limiting the manner by which notice otherwise may be given effectively to stockholders, any notice to stockholders may be given by electronic

transmission in the manner provided in Section 232 of the DGCL, as the same exists or may hereafter be amended.

Section 27.    Waivers.

A written waiver of any notice, signed by a stockholder or director, or waiver by electronic transmission by such person, whether given before or after the time of the event for which notice is to be given, shall be deemed equivalent to the notice required to be given to such person.   Neither the business nor the purpose of any meeting need be specified in such a waiver.

## ARTICLE VII – MISCELLANEOUS

Section 28.    Facsimile Signatures.

In addition to the provisions for use of facsimile signatures elsewhere specifically authorized in these By-laws, facsimile signatures of any officer or officers of the Corporation may be used whenever and as authorized by the Board of Directors or a committee thereof.

Section 29.    Corporate Seal.

The Board of Directors may provide a suitable seal, containing the name of the Corporation, which seal shall be in the charge of the Secretary.   If and when so directed by the Board of Directors or a committee thereof, duplicates of the seal may be kept and used by the Treasurer or by an Assistant Secretary or Assistant Treasurer.

Section 30.    Reliance upon Books, Reports, and Records.

Each director, each member of any committee designated by the Board of Directors, and each officer of the Corporation shall, in the performance of his or her duties, be fully protected in relying in good faith upon the books of account or other records of the Corporation and upon such information, opinions, reports or statements presented to the Corporation by any of its officers or employees, or committees of the Board of Directors so designated, or by any other person as to matters which such director or committee member reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Corporation.

Section 31.    Fiscal Year.

The fiscal year of the Corporation shall be the calendar year, unless a different fiscal year is fixed by the Board of Directors.

Section 32.    Time Periods.

In applying any provision of these By-laws which requires that an act be done or not be done a specified number of days prior to an event or that an act be done during a period of a specified number of days prior to an event, calendar days shall be used, the day of the doing of the act shall be excluded, and the day of the event shall be included.

Section 33.    <u>Definitions</u>.

Capitalized terms used herein and not defined herein shall have the meanings given to such terms in the Third Amended and Restated Certificate.

<u>ARTICLE VIII</u> – <u>INDEMNIFICATION OF DIRECTORS AND OFFICERS</u>

Section 34.    <u>Right to Indemnification</u>.

Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "<u>Proceeding</u>"), by reason of the fact that he or she is or was a director or an officer of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee, agent or trustee of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan (hereinafter an "<u>Indemnitee</u>"), whether the basis of such Proceeding is alleged action in an official capacity as a director, officer or trustee, or in any other capacity while serving as a director, officer, employee, agent or trustee, shall be indemnified and held harmless by the Corporation to the fullest extent authorized by the DGCL, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Corporation to provide broader indemnification rights than such law permitted the Corporation to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid in settlement) incurred or suffered by such Indemnitee in connection therewith.

Section 35.    <u>Right to Advancement of Expenses</u>.

In addition to the right to indemnification conferred in Section 1 of this ARTICLE VIII, an Indemnitee shall also have the right to be paid by the Corporation the expenses (including attorney's fees) incurred in defending any such proceeding in advance of its final disposition (hereinafter an "<u>Advancement of Expenses</u>"); provided, however, that, if the DGCL requires, an Advancement of Expenses incurred by an Indemnitee in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such Indemnitee, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the Corporation of an undertaking (hereinafter an "<u>Undertaking</u>"), by or on behalf of such Indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that such Indemnitee is not entitled to be indemnified for such expenses under this Section 2 or otherwise.

Section 36.    <u>Right of Indemnitee to Bring Suit</u>.

If a claim under Section 1 or 2 of this ARTICLE VIII is not paid in full by the Corporation within sixty (60) days after a written claim has been received by the Corporation, except in the case of a claim for an Advancement of Expenses, in which case the applicable period shall be twenty (20) days, the Indemnitee may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim.    If successful in whole or in part in any such suit, or in a suit brought by the Corporation to recover an Advancement of Expenses pursuant to the terms of an Undertaking, the Indemnitee shall be entitled to be paid also the

11

expense of prosecuting or defending such suit.    Neither the failure of the Corporation (including its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such suit that indemnification of the Indemnitee is proper in the circumstances because the Indemnitee has met the applicable standard of conduct set forth in the DGCL, nor an actual determination by the Corporation (including its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders) that the Indemnitee has not met such applicable standard of conduct, shall create a presumption that the Indemnitee has not met the applicable standard of conduct or, in the case of such a suit brought by the Indemnitee, be a defense to such suit.    In any suit brought by the Indemnitee to enforce a right to indemnification or to an advancement of expenses hereunder, or brought by the Corporation to recover an Advancement of Expenses pursuant to the terms of an Undertaking, the burden of proving that the Indemnitee is not entitled to be indemnified, or to such Advancement of Expenses, under this ARTICLE VIII or otherwise shall be on the Corporation.

Section 37.    <u>Non-Exclusivity of Rights</u>.

The rights to indemnification and to the Advancement of Expenses conferred in this ARTICLE VIII shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, the Third Amended and Restated Certificate, these By-laws, agreement, vote of stockholders or disinterested directors or otherwise.

Section 38.    <u>Insurance</u>.

The Corporation may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the DGCL.

Section 39.    <u>Indemnification of Employees and Agents of the Corporation</u>.

The Corporation may, to the extent authorized from time to time by the Board of Directors, grant rights to indemnification and to the advancement of expenses to any employee or agent of the Corporation to the fullest extent of the provisions of this ARTICLE VIII with respect to the indemnification and advancement of expenses of directors and officers of the Corporation.

Section 40.    <u>Nature of Rights</u>.

The rights conferred upon Indemnitees in this ARTICLE VIII shall be contract rights and such rights shall continue as to an Indemnitee who has ceased to be a director, officer or trustee and shall inure to the benefit of the Indemnitee's heirs, executors and administrators. Any amendment, alteration or repeal of this ARTICLE VIII that adversely affects any right of an Indemnitee or its successors shall be prospective only and shall not limit or eliminate any such right with respect to any proceeding involving any occurrence or alleged occurrence of any action or omission to act that took place prior to such amendment, alteration or repeal.

ARTICLE IX – AMENDMENTS

These By-laws may be amended or repealed by the Board of Directors at any meeting or by the stockholders at any meeting.

**<u>Exhibit C</u>**

Schedule of Assumed Executory Contracts and Unexpired Leases

| COUNTERPARTY/ CONTRACT NAME | CONTRACT DESCRIPTION | EFFECTIVE DATE | ENTITY | TYPE OF AGREEMENT | CURE AMOUNT |
|---|---|---|---|---|---|
| Assured Guaranty Ltd. | Confidentiality Agreement | 1/10/2012 | FGIC Corporation | Confidentiality Agreement | N/A |
| C12 Capital Management LP | Confidentiality Agreement-Privileged and Confidential | 9/26/2011 | FGIC Corporation | Confidentiality Agreement | N/A |
| Financial Guaranty Insurance Company | Space & Cost Sharing Agreement (as amended by the Amended and Restated Space & Cost Sharing Agreement on the Effective Date) | 1/1/2004 | FGIC Corporation | Space & Cost Sharing Agmt / Affiliate / Intercompany Agreement | As set forth in Article III.B.4 of the Plan |
| Financial Guaranty Insurance Company | Tax Allocation Amended and Restated (as amended by the Amended and Restated Income Tax Allocation Agreement on the Effective Date) | 12/18/2003 | FGIC Corporation | Tax Allocation Agreement | $0 |
| Financial Guaranty Insurance Company | Common Privilege Agreement | 8/20/2009 | FGIC Corporation | Miscellaneous | $0 |
| Wajnert, Thomas | Confidentiality Agreement | 7/21/2005 | FGIC Corporation and Financial Guaranty Insurance Company | Confidentiality Agreement | N/A |

## Exhibit D

List of Directors and Officers

**Board of Directors**:

After the Effective Date, the Board of Directors of the Reorganized Debtor shall consist of the following persons:

- John S. Dubel – Mr. Dubel is currently the Chief Executive Officer of FGIC Corp. and its wholly-owned subsidiary, Financial Guaranty Insurance Company ("FGIC").

- Timothy S. Travers – Mr. Travers is currently Executive Vice President and Chief Restructuring Officer of FGIC.

- A. Edward Turi, III – Mr. Turi is currently Executive Vice President and General Counsel to FGIC Corp. and FGIC.

**Officers**:

After the Effective Date, the Reorganized Debtor shall continue to have the same management team that was in place prior to the Effective Date. Specifically, the officers of Reorganized Debtor shall consist of the following persons:

- John S. Dubel – Chief Executive Officer

- A. Edward Turi, III – Executive Vice President, General Counsel, Secretary

- Nick Santoro – Senior Vice President, Chief Financial Officer

**Nature of Compensation:**

Consistent with current practice, the Directors and Officers shall not receive any compensation from the Reorganized Debtor.

## **Exhibit E**

Amended and Restated Cost Sharing Agreement

## AMENDED AND RESTATED SPACE AND COST SHARING AGREEMENT

Amended and Restated Space and Cost Sharing Agreement (the "Agreement"), dated as of [_____], 2012, between FINANCIAL GUARANTY INSURANCE COMPANY ("FGIC") and FGIC CORPORATION ("FGIC Corp.").

WHEREAS, FGIC and FGIC Corp. are members of the same holding company system;

WHEREAS, FGIC and FGIC Corp. are parties to that certain Space and Cost Sharing Agreement, dated as of January 1, 2004 ( the "Existing Cost Sharing Agreement");

WHEREAS, FGIC and FGIC Corp. desire to amend and restate in its entirety the Existing Cost Sharing Agreement in the manner set forth herein to be effective on and as of the date first written above; and

WHEREAS, FGIC, from time to time, may render services to FGIC Corp., including, without limitation, providing office space to FGIC Corp., or may incur costs and other expenses that benefit FGIC Corp., and FGIC Corp. desires to reimburse FGIC therefor on a fair and equitable basis.

NOW THEREFORE, in consideration of the mutual promises contained herein, FGIC and FGIC Corp. do hereby mutually agree as follows:

1.    Upon the written request of FGIC Corp., FGIC may, in its sole discretion, make available to FGIC Corp. office space at 125 Park Avenue, New York, New York, or such other location or locations as may be owned or leased by FGIC from time to time, and FGIC may incur, in its sole discretion, costs and other expenses related to such office space for the benefit of FGIC Corp.  FGIC Corp. shall reimburse FGIC for the portion of leasehold and related expenses (which may include the cost of tenant improvements) allocable to FGIC Corp., as reasonably determined by FGIC.

2.    Upon the written request of FGIC Corp., FGIC may provide, in its sole discretion, either directly or through the engagement of third parties, operational and administrative services related to FGIC Corp.'s business as an insurance holding company for FGIC.  In the event that FGIC determines to provide any services or space pursuant to this Agreement, then FGIC's only obligation in connection therewith shall be to act in good faith, and FGIC shall not have any liability of any nature to FGIC Corp. or any other person or entity for any action taken or not taken by FGIC in good faith or otherwise with respect to any such services or space provided or not provided, as the case may be, by FGIC.

3.    FGIC may, in its sole discretion, incur and pay costs and other expenses that benefit FGIC Corp. in whole or in part, including, without limitation, costs and other expenses relating to insurance coverage.  FGIC Corp. agrees to reimburse FGIC for FGIC Corp.'s allocable share (which may be 100%) of the actual amount of such costs and other expenses incurred and paid by FGIC and such allocation shall be made on a fair and equitable basis as may be reasonably determined by FGIC.

4.    The charges to be paid by FGIC Corp. to FGIC for the space and services provided hereunder shall represent the actual costs incurred so that neither party shall receive a profit nor suffer a loss thereby.  The charges to be paid shall be allocated pursuant to New York Insurance Department Regulation No. 30 (11 NYCRR Chapter IV-C Parts 105-109) or any successor thereto.  All charges shall be computed on the basis of the actual or estimated (by approximation) usage and may include, but not be limited to, in the case of space sharing, an allocation for the rental and other costs of office space employed, electricity and other utility charges, security, maintenance and cleaning expenses, costs of tenant improvements, and telephone equipment charges, and in the case of cost sharing, an allocation for a portion of the employee's salary, fringe benefits, office space employed, telephone charges, use of other apparatus and out-of-pocket expenses for travel, transportation, meals, entertainment and related expenses.

5.    Each Party shall maintain exclusive ownership of its individual books, accounts, and records.

The books, accounts, and records maintained by the parties shall clearly and accurately disclose the nature and detail of the transactions, including, without limitation, such accounting information as is necessary to support the reasonableness of the charges or fees allocated to FGIC Corp. hereunder.

Each party, or its authorized representatives, shall have access at all reasonable times to the books, accounts, and records of the other party to this Agreement for purposes of obtaining information concerning this Agreement.

6.    All records, files, and other materials owned by FGIC and used in rendering services shall be owned by and remain the property of FGIC.

7.    Reports setting forth the amounts of costs, expenses, and other charges payable by FGIC Corp. for the space or services provided hereunder shall be furnished by FGIC to FGIC Corp. quarterly (or more frequently as FGIC may determine, in its sole discretion), and FGIC Corp. shall pay FGIC in full for such reported amounts within fifteen (15) days after a report has been furnished.  Notwithstanding such payment, the amounts set forth in the report shall be subject to FGIC Corp.'s right to audit or otherwise review the same and to require FGIC to deliver such evidence supporting the reported amounts as may reasonably be requested.

8.    This Agreement shall remain in force until terminated by either party by giving at least sixty (60) days prior written notice to the other or immediately upon mutual consent in writing.  This Agreement may not be assigned by either party without the prior written consent of the New York State Department of Financial Services, or any successor thereto.

9.    All notices, requests, demands, or communications hereunder shall be in writing and may be provided by any reasonable means, but shall be deemed to have been duly given if delivered or if deposited in the United States mail, first class, registered or certified postage pre-paid.  For the purpose of this Agreement, each party's notice address shall be 125 Park Avenue, New York, New York,  10017, Attention:  General Counsel, unless and until such party specifies a different address for notices.

10.   This Agreement constitutes the entire agreement between the parties, supersedes all prior agreements, including, without limitation, the Existing Cost Sharing Agreement, and no variation, modification, waiver or consensual cancellation of any provision of this Agreement, or consent to any departure therefrom shall be of any force or effect unless the same shall be reduced to writing and signed by the parties.

11.   The validity, enforceability, interpretation and construction of this Agreement shall be determined in accordance with the laws of the State of New York; and this Agreement shall inure to the benefit of, and shall be binding upon, each of the undersigned and their respective legal representatives, successors and assigns, as the case may be.

12.   This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  This Agreement may be executed by facsimile or PDF signatures, and such facsimile or PDF signatures will be deemed to be as valid as an original signature whether or not confirmed by delivering the original signatures in person, by courier or mail.

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed effective as of the date first written above.

**FINANCIAL GUARANTY INSURANCE COMPANY**

_____
Name:
Title:

**FGIC CORPORATION**

_____
Name:
Title: